**In re Albert MERCADO, Lilia Mercado, Debtors.**

**Bankruptcy No. SA 90–01096 JR.**

United States Bankruptcy Court, C.D. California.

Feb. 25, 1991.

Dennis Winters, Minier & Winters, Santa Ana, Cal., for debtor in possession.

Steven G. Harman, Parades & Harman, Santa Ana, Cal., for creditor.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Debtors filed under Chapter 11 on February 16, 1990. Their disclosure statement was approved December 11, 1990. In the proposed plan of reorganization (the "Plan"), debtor enjoins the potential class of nondischargeable claims from executing on judgments until a default occurs, plus three months to cure. Jokay Company ("Jokay"), the holder of a potential nondischargeable claim, objected to the Plan because it unlawfully attempts to affect the rights of holders of nondischargeable claims. In a separate adversary action, *Jokay v. Mercado*, SA 90–0094 JR, Jokay seeks a nondischargeability judgment, based upon misrepresentations related to an investment. I heard oral argument at the Plan confirmation hearing on January 10, 1991 and took the issue under submission. The confirmation hearing was continued to February 25, 1991.

## JURISDICTION

This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) (the district

courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (L).

## STATEMENT OF FACTS

Under the Plan, Class 8 includes "All allowed non-priority unsecured claims of creditors who have timely filed nondischargeability complaints against either or both of the Debtors, which Complaints have not been dismissed prior to the hearing of the Plan." Unsecured claims in excess of $500 constitute Class 9 and will be paid 40%. Class 8 claims will be paid in full on a pro-rata basis with Class 9. After 40% has been paid to Class 9, thus extinguishing their claims, debtors will continue payments on Class 8 claims until paid in full. In the meantime, "Class 8 creditors shall be stayed from proceeding to execute on any nondischargeable judgment received unless there is a default under the Plan which has not been cured for 3 months after the initial default." Classes 8 and 9 are impaired.

## DISCUSSION

The issue is whether Jokay may be enjoined by the terms of the Plan from executing on any nondischargeable judgment it might obtain outside the parameters of the Plan.

Jokay objects to the Plan, urging it violates and improperly interferes with the rights Class 8 creditors have under § 1141(d)(2) of the Bankruptcy Code. Under § 1141(d)(2), a confirmed plan cannot discharge nondischargeable debts. Debtor replies that Jokay's objection should be overruled because Jokay will be paid in full, if it wins the nondischargeability action.

■ There are two ways of viewing the scope of § 1141(d)(2). The broad view is that it excepts a nondischargeable debt from any effects of the plan. A narrower perspective is that the effect of § 1141(d)(2) should be limited to holding the debt nondischargeable. That is, the plan cannot discharge the debt, but the claimant may otherwise subject the debt to the provisions of a confirmed plan. I favor the second approach.

■ A confirmed plan generally binds all creditors, even though the creditor's claim is impaired and the creditor rejects the plan, provided the impaired class accepts the plan or the treatment of the class is found to be fair and equitable under § 1129(b) of the Bankruptcy Code. However, § 1141(d)(2) is an exception to this general rule. This section provides that, "The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title." Section 523 lists those classes of debts of individual debtors that are excepted from discharge. Section 524 of the Bankruptcy Code discusses the effect of a discharge. One effect is that a discharge acts as an injunction against any action to collect on the discharged obligation. Obviously, in the case of a nondischargeable debt, it follows that § 524 does not apply so the creditor is free to take collection actions against the debtor and its property even though the confirmed plan may provide for satisfaction of the claim in full. To prevent this from happening, the Plan enjoins holders of nondischargeable debts from attempting to collect outside the Plan.

Section 1141(d)(2) excludes from discharge "any debt" excepted from discharge under § 523. Under § 101(11) of the Bankruptcy Code, "debt" is defined as a liability on a claim. Section 101(4) defines "claim" to mean a right to payment. Section 1141(d)(2), therefore, excepts from discharge the right to payment on a liability that is found to be nondischargeable under § 523. Stated another way, § 1141(d)(2) preserves the right of a creditor holding a nondischargeable debt to full payment. It does not provide that the provisions of a confirmed plan cannot affect the rights of

such creditor or that, as the bankruptcy court in *In re Howell*, 84 B.R. 834 (Bankr. M.D.Fla.1988) stated, "... [A] creditor who has a debt excepted from discharge under section 523 cannot be bound by the provisions of a confirmed plan." *Id.* at 836. Frankly, I disagree with the *Howell* court's approach of broadly applying § 1141(d)(2). An expansive interpretation is inconsistent with the statutory language and imposes unwarranted limitations on debtors seeking to reorganize under Chapter 11. I also suggest that such an approach is inconsistent with the views of the Supreme Court as expressed in *United States v. Energy Resources Co., Inc.*, 495 U.S. ——, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990).

*Energy Resources* gives guidance regarding the power of the bankruptcy court and need for flexibility when fashioning appropriate relief to debtors in bankruptcy. The debtor in *Energy Resources* attempted through the plan to require the Internal Revenue Service ("IRS") to apply tax payments first to trust fund taxes and then to other tax liabilities. The IRS objected to this treatment arguing that the bankruptcy court did not have the power to order this application. Although some lower court decisions had resolved this issue based on whether the tax payment was voluntary or involuntary, the Supreme Court indicated that its decision did not turn on that determination, but rather on its view that Congress had granted bankruptcy courts broad authority to resolve debtor/creditor issues. *Id.* 110 S.Ct. at 2142. The Court reviewed the residual authority of the bankruptcy court to approve reorganization plans including "any ... appropriate provision not inconsistent with the applicable provisions of this title." *Id.* The Court also acknowledged the broad power of the bankruptcy court under § 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. As the Court stated "These statutory directives are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *Id.*

The IRS responded that the bankruptcy court had exercised its equitable power in conflict with the Bankruptcy Code's provisions protecting the government's ability to collect delinquent debts. The Court answered this argument pointing out that the bankruptcy court had to find that the reorganization would likely succeed (§ 1129(a)(11)), thereby assuring the likelihood of collection on the tax debt. See 11 U.S.C. § 1129(a)(11) (Bankruptcy Code).

The Court further held that the bankruptcy court did not exercise its equitable power in conflict with a Code provision or with any other federal law that must be taken into consideration. The IRS argued that the plan contravened § 6672 of the Internal Revenue Code, which is a provision permitting the IRS to collect unpaid trust fund taxes directly from the personal assets of "responsible" individuals. Again, the Court rejected the IRS argument finding that the plan did not prevent the government from collecting trust fund taxes, but rather to the contrary, it required the government to collect trust fund payments before collecting other taxes. In summary, the Court held that "[t]he bankruptcy court has not transgressed any limitation on its broad power. We therefore hold that it may order the IRS to apply tax payments to offset trust fund obligations where it concludes that this action is necessary for a reorganization's success." *Id.* at 2143.

 *Energy Resources*, therefore, stands for the following principles: (1) the bankruptcy court has broad equitable power to resolve debtor/creditor matters; (2) its equitable power is limited by specific provisions in the Bankruptcy Code and other federal laws that should be considered before exercising this power; and (3) absent specific conflicts in the Bankruptcy Code and federal law, a debtor has broad discretion to deal with its creditors through the plan process, provided its actions are necessary for a successful reorganization, and the bankruptcy court has the equitable power to approve such plans.

Accordingly, a broad flexible approach to § 1141(d)(2) to give a debtor the ability to deal effectively with its nondischargeable claims would not be inconsistent with the views of the Supreme Court as expressed in *Energy Resources.* In balancing the interests of the creditor against the needs of the debtor, unwarranted restrictions on bankruptcy courts and debtors in the reorganization setting are unnecessary and contrary to the goal in bankruptcy of giving debtors a "fresh start". Otherwise, a creditor holding a nondischargeable debt is in a position to undercut a debtor's attempt to reorganize, possibly harming other creditors who might benefit from the proposed plan.

Clearly, the creditor has a right to be paid the full amount of its claim. The plan cannot substitute some other treatment. The creditor would argue that it not only has the right to full payment, but immediate payment. Absent some restraint in the plan, the creditor would have the right to commence collection efforts including attachment of debtor's property. In many cases, such collection actions might effectively preclude the reorganized debtor from consummating its plan. The creditor argues that any limitation on its right to collect on its claim is unjust and conflicts with § 1141(d)(2).

The creditor glosses over the protections in Chapter 11 that ensure fair treatment. It has a right to vote on the plan as an impaired creditor. It is impaired because as a holder of a nondischargeable claim, the plan enjoins it from immediately collecting against assets of the reorganized debtor. If the creditor rejects the plan, the plan cannot be confirmed unless the plan does not discriminate unfairly against the creditor and it is fair and equitable. See 11 U.S.C. § 1129(b) (Bankruptcy Code). In order for the plan to be fair and equitable, the creditor has to receive, on account of its claim, property with a value as of the effective date of the plan equal to the allowed amount of the claim. This means that even if the debtor's plan calls for payment to the creditor over an extended period of time, the creditor would have to receive the present value of its claim. The

court must also determine that the plan is feasible. In other words, a determination is made that debtor has the ability to consummate the plan. These protections for the creditor provide reasonable assurances that the creditor will be paid on its claim.

In light of these protections in the Code and the rationale of *Energy Resources,* the bankruptcy court has the power to find that an injunction in the plan is appropriate should it be necessary for the success of the plan and the other requirements of § 1129 are satisfied.

Only a few cases have addressed this issue. Admittedly, the cases do not support the limited approach to § 1141(d)(2). The case most often cited is *In re Howell,* 84 B.R. 834 (M.D.Fla.1988). In *Howell,* the creditor had a nondischargeable judgment resulting from a conversion claim. The debtor's plan provided for monthly payments of the debt until paid in full. The plan precluded the creditor from executing or collecting the debt outside of the plan. *Id.* at 835. The court held that, although the creditor "is entitled to participate in the distribution under the plan to unsecured creditors, it also has the right to execute or collect on its nondischargeable judgment debt free from the injunctive and other provisions of the plan." *Id.* at 835.

In reaching this conclusion, *Howell* relied on the following passage from the Supreme Court case, *Friend v. Talcott,* 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718 (1913):

> It is apparent that the exemptions [from discharge] do not rest upon any theory of the exclusion of the creditor from the bankruptcy act, or of deprivation of right to participate in the distribution, but solely on the ground that, although such rights are enjoyed, an exemption from the effect of the discharge is superadded.

See *Howell, supra,* at 837 (citing *Friend,* 228 U.S. at 39, 33 S.Ct. at 508).

In *Friend,* the creditor held a nondischargeable claim, was paid a portion of the claim under the plan and sought to obtain the deficiency by suing the debtor in state court. The debtor reopened the case and attempted to enjoin the creditor from seek-

ing payment on the deficiency, arguing that the creditor elected to be treated under the plan and, therefore, its claim should be considered discharged. In response, the Court stated that it was a misconception to believe that the exception to discharge under the Act excludes treatment of that debt from the Act so that the creditor may not participate in the distribution of assets. *Friend, supra* at 39, 33 S.Ct. at 507. Since the creditor had the right to participate in the plan and collect outside the plan because its claim was nondischargeable, the court rejected debtor's theory of election and waiver of remedies based on the filing of the proof of claim and acceptance of distribution in the bankruptcy.

■ I agree with *Howell* that Congress does not restrict a creditor with a nondischargeable judgment from participating in a plan distribution. However, I do not understand *Howell's* reliance on *Friend* for the proposition that Congress intended to prohibit a debtor through a confirmed plan from enjoining a creditor "from collecting the balance of the judgment outside the plan ..." *Howell, supra* at 837.

■ *Friend* answers the question *whether* a creditor can fully collect a nondischargeable claim from multiple sources, not *when*. *Friend* grants two rights: (1) the right to collect on a nondischargeable claim outside the plan and "superadded" to that right, (2) the right to participate in distributions under the plan. *Friend* does not suggest that a confirmed plan cannot limit the right to collect outside the plan.

Other cases rely on *Howell*. For example, in *In re Amigoni*, 109 B.R. 341 (Bankr. N.D.Ill.1989), debtors were convicted under a federal criminal statute. Restitution was ordered completed within five years. The plan provided for full payment over 12 years. In denying confirmation, the court said debtors may not use bankruptcy laws to alter the restitution provision of federal sentences. *Id.* at 347. Furthermore, the party holding a nondischargeable debt cannot be enjoined from enforcing rights outside of bankruptcy. *Amigoni* relies on *Howell, supra, In re Gurwitch*, 794 F.2d 584 (11th Cir.1986), and *In re Adelman*, 90

B.R. 1012 (Bankr.S.D.1988). In citing *Howell,* the court accepts the proposition that a creditor who has a debt excepted from discharge under § 523 cannot be bound by the provisions of a confirmed plan. *Id.* 109 B.R. at 345.

The *Gurwitch* plan provided for the payment of taxes in a lump sum. After consummation of the plan, the IRS assessed additional tax penalties not set forth in its proof of claim. The Eleventh Circuit held that the penalties could be collected outside the terms of the plan. In responding to debtor's argument that the amount of the tax should be fixed by the confirmation of the plan, the court said "Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code." In other words, debtor could not use the plan to limit a nondischargeable claim and payment of any deficiency. *Gurwitch, supra,* at 585–6. To support its position, *Gurwitch* cited *In re Becker's Motor Transportation, Inc.*, 632 F.2d 242, 248 (3d Cir.1980), cert. denied.

*Becker's* was also a tax case. As in *Gurwitch,* after the plan had been consummated, the IRS assessed additional penalties on the debtor. The issue in *Becker's* was whether the bankruptcy court could enjoin the IRS collection efforts. In its analysis, the court pointed to the Anti-injunction Statute. "... [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a). *Becker's,* therefore, held that where a federal statute specifically precludes an act, the bankruptcy court does not have the power to ignore that limitation on its authority.

*Amigoni* also cited *In re Adelman,* 90 B.R. 1012 (Bankr.S.D.1988), to support its holding. The issue in *Adelman* was whether the failure of a creditor holding a nondischargeability claim to participate in the plan process could result in a waiver of its rights to act outside the plan. The creditor was served with the disclosure statement, plan, and notice of cramdown. No ballot was returned, no objection or

appearance was made at the confirmation hearing, and no appeal was taken on the order confirming the plan by the creditor. The court held that the creditor did not waive its nondischargeability claim by failing to participate in the confirmation process. "The confirmed plan did not bind [creditor] as to the dischargeability-nondischargeability of his claim, just as the *Gurwitch* confirmed plan did not bind the IRS as to the amount of nondischargeable taxes." *Id.* at 1018.

*Gurwitch* and *Becker's* are tax cases and *Gurwitch* relies on *Becker's*. Both cases are distinguishable from the case at hand. They rely on the Anti-injunction Statute as a limitation on the power of the bankruptcy court. I agree with these holdings. On the other hand, *Howell* relies on an erroneous interpretation of the Supreme Court's holding in *Friend,* as discussed above. *Adelman* presents a waiver issue that easily distinguishes it from the situation here. Moreover, the result is not contrary to a narrow application of § 1141(d)(2). Finally, *Amigoni* involves another federal statute in conflict with the action taken by the bankruptcy court. It also relies on *Howell* which in my view is based on a questionable interpretation of *Friend.* Thus, we have a string of cases either relying on *Howell,* or which present conflicts between federal statutes and the equitable power of the bankruptcy court.

I am unwilling to follow *Howell.* I see no conflict with federal law or within the Bankruptcy Code in allowing a debtor to control when a creditor holding a nondischargeable claim gets paid, provided the limitation is necessary for the success of the reorganization. This, of course, presupposes confirmation of the plan and full compliance with the creditor protections built into § 1129.

A confirmed plan of reorganization usually sets forth a payment schedule of debts, based on an appropriate method of consummation—whether it be future earnings, sale of assets, loans, etc. Were the holder of a nondischargeable claim to execute on a judgment, it could disrupt the reorganization and, in some cases, force the debtor into liquidation. *Energy Resources* favors weighing the equities in favor of successful reorganization. "[T]he Code, moreover, requires the bankruptcy court to assure itself that reorganization will succeed." *Energy Resources, supra,* at 2142 (citing 11 U.S.C. § 1129(a)(11)).

■ Accordingly, I am unwilling to find the injunction in the Plan provision that effects Class 8, *per se* inconsistent with § 1141(d)(2). Debtor, however, has failed to provide evidence to show that the injunction is necessary for the success of the reorganization.

■ Moreover, debtor has not shown that a three month cure period is necessary and reasonable. Balancing the right of Class 8 creditors to receive full payment timely against a fair opportunity for debtor to effect its rehabilitation, I find that a 30 day cure period is more reasonable.

Debtor shall have additional time to submit evidence in line with this opinion to justify the inclusion of the injunction provision in the Plan.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.

### ORDER

In accordance with the findings of fact and conclusions of law set forth in my memorandum opinion of this date, it is

ORDERED that the injunction in the Plan provision that effects Class 8 is not *per se* inconsistent with § 1141(d)(2). Debtor, however, has failed to provide evidence to show that the injunction here is necessary for the success of the reorganization.

IT IS FURTHER ORDERED that a 30–day cure period, rather than the three-month period stated in the Plan, for Class 8 creditors to proceed to collect outside of the Plan on a default is reasonable.

IT IS FURTHER ORDERED that debtor shall have additional time to submit evidence in line with my Memorandum Opin-

ion concerning the Plan to justify the inclusion of the injunction provision of the Plan.