## In re Bruce BARTLESON, Debtor.

### Earl Dolven and Evelyn Dolven, Appellants,

v.

### Bruce Bartleson, Appellee.

BAP No. EC–99–1638–MRB.
Bankruptcy No. 95–24485–C–11.
Adversary No. 97–2230.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 29, 2000.

Decided Aug. 30, 2000.

David J. Cook, Cook, Perkiss Professional Law Corp., San Franciso, CA, for Earl and Evelyn Dolven.

Paul Bartleson, Jackson, CA, for Bruce Bartleson.

Before: MONTALI, RUSSELL and BRANDT, Bankruptcy Judges.

*OPINION*

MONTALI, Bankruptcy Judge.

### I.

Creditors holding a nondischargeable judgment against debtor appeal the decision of the bankruptcy court denying their request to pursue, outside the debtor's confirmed plan of reorganization, certain post-judgment remedies against debtor. We REVERSE.

### II.

#### FACTS

On March 27, 1997, Appellants Earl and Evelyn Dolven ("Creditors") obtained a stipulated judgment of nondischargeability (the "Judgment") against Appellee Bruce Bartleson ("Debtor"). In the Judgment, the court declared that Creditors hold a nondischargeable debt in the amount of $200,000, and a dischargeable unsecured debt in the amount of $182,000 (collectively, the "Total Debt").

On October 5, 1998, Debtor filed his third amended plan of reorganization (the "Plan"). The Plan treated the Total Debt as a Class VII unsecured claim. Pursuant to paragraph 3.23 of the Plan, Debtor proposed to pay, over time and from certain assets, one hundred percent of all claims of unsecured creditors. The Plan did not provide a starting date for the semi-annual payments, and did not provide a date by which the payments would be completed. Paragraphs 5.1 through 5.6 of the Plan described the assets which would be utilized by Debtor to fund the Plan. The Plan does not contemplate the use of certain post-confirmation non-exempt assets, such as Debtor's income or earnings as a real estate broker (the "Non–Plan Assets").

The Plan did not contain any provision enjoining holders of nondischargeable debts from pursuing collection of such debts outside of the plan. The Plan did, however, initially provide at paragraph 7.1 that "Confirmation of this Plan shall release and discharge all claims of creditors against the Debtor, Bruce Bartleson, prior to the Effective Date, except as provided in the Plan." On November 18, 1998, Creditors objected to the Plan, noting that paragraph 7.1 of the Plan should be revised to reflect that it did not operate to discharge Creditors' nondischargeable debt. Creditors stated, "With this correction and clarification, Creditor DOLVEN will withdraw his objection and vote his $382,000 claim in favor of the Plan." Thereafter, on December 9, 1998, Debtor filed a second amendment to the Plan which provided:

> At page 10, Paragraph 7.1 of Article VII of the Third Amended Plan, is amended to read as follows:
>
> 7.1 Confirmation of this Plan shall release and discharge all claims of creditors against the Debtor, Bruce Bartleson, prior to the Effective Date, except as provided in the Plan; and in the settlement agreement and resulting March 27, 1997 Order and Judgment of Nondischargeability of Debt.

At a hearing on December 9, 1998, the court indicated that it would confirm the Plan and directed Debtor to submit an order confirming the Plan. Debtor submitted the order in September 1999, and the order confirming the Plan was entered on the docket on September 15, 1999.

On June 14, 1999, Creditors initiated collection efforts with respect to the non-dischargeable portion of the Total Debt. Creditors filed a motion for assignment of rights, restraining order, and turnover of certain checks, drafts, and money orders (the "Collection Motion").[1] The Non–Plan Assets were the subject of the Collection Motion; Creditors did not seek recovery of assets which had been designated to fund the Plan. Debtor opposed the Collection Motion, arguing that his earnings were exempt under California law, but not arguing that confirmation of the Plan precluded Creditors' collection efforts or that the collection efforts would jeopardize performance under the Plan.

■ The record contains a minute entry dated September 15, 1999, indicating that the matter was submitted, but does not contain any transcript of any hearing on the Collection Motion. On September 15, 1999, the bankruptcy court entered a one-page order denying the Collection Motion. The court stated:

> The court has carefully reviewed the terms of the confirmed plan of reorganization and is persuaded that the collection rights of the plaintiffs in this adversary proceeding are subject to the terms of the plan of reorganization.
>
> IT IS ORDERED that the motion is DENIED, without prejudice to being

renewed if the case is converted to chapter 7 or the order of confirmation is revoked sometime in the future.

■ By this order, the bankruptcy court (without evidence that pursuit of the Non–Plan Assets would thwart Debtor's performance of the Plan), either (1) effectively enjoined Creditors from pursuing their remedies against the Non–Plan Assets, or (2) declared that confirmation of the Plan had the same effect. Creditors filed a timely notice of appeal of this final order [2] on September 24, 1999.

### III.

### ISSUE

Whether a confirmed plan of reorganization setting forth a payment plan governing a nondischargeable debt precludes the holder of that nondischargeable debt from exercising collection rights outside the plan, even though the plan does not include any provision specifically restricting or enjoining such collection activity.

### IV.

### STANDARD OF REVIEW

■ The bankruptcy appellate panel reviews a bankruptcy court's conclusions of law de novo and its findings of fact under the clearly erroneous standard. *Walsh v. Northwestern Nat'l Ins. Co. (In re Ferrante),* 51 F.3d 1473, 1475 (9th Cir. 1995). This appeal involves the interpretation of terms of a chapter 11 plan of reorganization. "Like a consent decree, a chapter 11 plan has elements of both a judgment and a contract. Because of a plan's likeness to a consent decree, a chap-

---

1. Because the underlying Judgment had been entered by the bankruptcy court, Creditors filed the post-judgment Collection Motion there.

2. This order resolved completely the issues raised by the post-judgment Collection Motion filed by Creditors. If a final judgment has been entered (i.e., the Judgment), subsequent post-judgment proceedings are treated for the purposes of appeal as a separate lawsuit and

resulting post-judgment orders are appealable if final. *Securities & Exchange Comm'n v. Suter,* 832 F.2d 988, 990 (7th Cir.1987). A post-judgment order is final where, as here, it disposes completely of the issues raised. *Id.; see also Findley v. Blinken (In re Joint Eastern & Southern Districts Asbestos Litigation),* 22 F.3d 755, 760 (7th Cir.1994) (an order concluding a post-judgment collection proceeding is final and appealable).

ter 11 plan should generally be interpreted as if it were a contract." *C.F. Brookside, Ltd. v. Skyview Memorial Lawn Cemetery (In re Affordable Housing Development Corp.)*, 175 B.R. 324, 329 (9th Cir. BAP 1994), *citing Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir.1993). Questions of contract enforcement and interpretation are subject to *de novo* review unless extrinsic evidence was introduced on issues such as intent. *Ankeny v. Meyer (In re Ankeny)*, 184 B.R. 64, 68 (9th Cir. BAP 1995); *Estreito v. Citirealty Corp. (In re Estreito)*, 111 B.R. 294, 295 (9th Cir. BAP 1990).

## V.

## DISCUSSION

■ No question exists as to the nondischargeable nature—pursuant to 11 U.S.C. § 523 [3]—of the portion of the Total Debt which Creditors sought to recover in the Collection Motion. Instead, the parties dispute how and when Creditors may collect this nondischargeable debt. Creditors contend that they may pursue collection efforts with respect to the nondischargeable portion of the Total Debt outside the

3. Unless otherwise indicated, all section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

4. Section 1141 provides:
(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is

Plan, particularly against Non–Plan Assets. Debtor, however, argues that the Plan precludes collection activity by Creditors and that the Creditors' remedies are limited to the payment plan set forth in the Plan. The issue is whether, by including provisions in the Plan purporting to establish a payment plan governing the Total Debt, Debtor can control the timing and payment of the nondischargeable portion of this debt, even though Debtor failed to include any provision in the Plan specifically restricting or enjoining Creditors' collection rights and failed to dedicate the Non–Plan Assets to the funding of the Plan. This issue appears to be one of first impression for the Bankruptcy Appellate Panel.

### A. The Law Regarding the Effect of a Confirmed Plan on Collection Rights of Creditors Holding Nondischargeable Claims

1. *The Interplay of Section 1141 and Section 524*

### i. Section 1141

Section 1141 governs the effect of confirmation on creditors and debtors.[4] Subsec-

free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.
(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
(ii) such claim is allowed under section 502 of this title; or
(iii) the holder of such claim has accepted the plan; and
(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.
(2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.
(3) The confirmation of a plan does not discharge a debtor if—

tion (d)(2) states that confirmation of a plan does not discharge an individual debtor from a debt excepted from discharge under section 523. Other provisions of section 1141 govern the effect of confirmation, but carve out specific exceptions for debts that fall within the ambit of subsection (d)(2). For example, "except as provided in subsection[ ] (d)(2)", a confirmed plan binds the debtor and any creditor (*see* section 1141(a)) and a debtor's property remains free and clear of all claims and interests of creditors (*see* section 1141(c)). Similarly, except as otherwise provided in subsection (d)(2), the confirmation of a plan discharges a debtor from all preconfirmation debts (*see* section 1141(d)).

At least one court has held that in stating that a plan is binding "except as otherwise provided" in subsection (d)(2), Congress merely intended that the holder of a nondischargeable claim receive full payment on that claim. *In re Mercado*, 124 B.R. 799, 801–02 (Bankr.C.D.Cal.1991). According to *Mercado*, a plan could otherwise affect the rights of a creditor holding a nondischargeable claim, as long as the plan did not attempt to impose a discharge absent full payment. If the only exception were contained within the confines of section 1141(d)—but not in subsections (a) and (c)—*Mercado's* reasoning would be persuasive. Section 1141(d) explicitly provides that a discharge is not available through a confirmed plan with respect to a nondischargeable debt. If Congress' goal was solely to shield nondischargeable debts from a chapter 11 discharge, the exception contained in section 1141(d) would have been sufficient.

█ Congress, however, also carved an 1141(d)(2) exception to the general precepts contained in sections (a) and (c) re-

garding the binding effect of a plan and regarding the right of a debtor to retain property free and clear of all claims of creditors. *Mercado's* interpretation effectively treats the exceptions contained in subsections (a) and (c) of section 1141 as surplusage.[5] A court should not interpret a statute in a manner that would render meaningless certain words and phrases contained in that statute. *Hodge v. Kun (In re Kun)*, 868 F.2d 1069, 1071 (9th Cir.1989) ("A fundamental principle of statutory construction is that 'interpretative constructions [of statutes] which would render some words surplusage . . . are to be avoided.' ").

As discussed later, most courts interpreting section 1141 have concluded that a chapter 11 plan does not have a binding effect with respect to nondischargeable debts of an individual debtor. *See DePaolo v. United States (In re DePaolo)*, 45 F.3d 373, 375 (10th Cir.1995) ("Although 'a confirmed plan generally binds any creditor regardless of whether the creditor's claim is impaired by the plan or whether the creditor accepted the plan,' [citation omitted] the same is not true of a creditor whose claim is nondischargeable"); *see also Goodnow v. Adelman (In re Adelman)*, 90 B.R. 1012 (Bankr.D.S.D.1988). In *Adelman*, the court discussed section 1141 and its application to nondischargeable debts:

> [Section] 1141 describes the effect of a confirmed Chapter 11 plan. Nondischargeable debts are singled out for special treatment. First, an individual debtor is not discharged from any debt excepted from discharge under Section 523. 11 U.S.C. § 1141(d)(2). Second, *the holders of the nondischargeable claims are not bound by the provisions*

---

(A) the plan provides for the liquidation of all or substantially all of the property of the estate;
(B) the debtor does not engage in business after consummation of the plan; and
(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

**5.** Of course, the provisions of those two subsections do bind holders of dischargeable claims.

*of a confirmed plan.* 11 U.S.C. § 1141(a) [other cite omitted]. Any property dealt with by the plan is free and clear of all claims and interests, except for the nondischargeable claims. 11 U.S.C. § 1141(c). *Based on these provisions of the Code, it has been held that a holder of a nondischargeable claim may execute or collect on his non-dischargeable debt without regard to the discharge provisions of the plan.*

*Adelman,* 90 B.R. at 1017–18 (emphasis added).

### ii. Section 524

■ In arguing that the Plan binds the Creditors and thereby prevents their post-confirmation collection activity, Debtor fails to recognize the consequences accompanying the determination that a debt is nondischargeable. Section 524 provides that a discharge operates as an injunction against collection activity; without the discharge, however, such activity is permissible. In order to obtain the benefits of that discharge injunction with respect to a non-dischargeable debt, the debtor must specifically request one.[6] An injunction cannot be implied, unless it exists as a matter of law. Here, the automatic injunction of section 524 did not apply, and Debtor had the burden of specifically seeking one.

■ Sections 1141 and 524, read together, indicate that a party holding a non-dischargeable debt has the right to pursue collection of that debt. As noted by one court examining the interplay between sections 1141 and 524:

> The combined effect of 11 U.S.C. § 1141(d) and § 524 is ·to void, upon confirmation of the plan, all judgments related to a dischargeable debt and to enjoin future efforts to collect on the debt except as otherwise provided in the plan. [Citation omitted]. The clear implication is that debts determined not to

be dischargeable are not voided upon confirmation, but rather continue to exist outside the plan. [Citation omitted]. *The party to whom such a debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy.*

*See In re Amigoni,* 109 B.R. 341, 345 (Bankr.N.D.Ill.1989) (emphasis added).

### 2. Cases Permitting Collection Outside a Plan

In *DePaolo,* the Tenth Circuit held that a confirmed plan does not bind a creditor whose claim is nondischargeable. " 'The party to whom a nondischargeable debt is owed is entitled after confirmation to enforce his or her rights as they would exist outside of bankruptcy.' " *DePaolo,* 45 F.3d at 375, quoting *Amigoni,* 109 B.R. at 345, and citing *Grynberg v. United States (In re Grynberg),* 986 F.2d 367, 370 (10th Cir.1993), *cert. denied,* 510 U.S. 812, 114 S.Ct. 57, 126 L.Ed.2d 27 (1993) ("However, like any other holder of a nondischargeable debt, the IRS is also free to pursue the debtor outside bankruptcy."). In *De-Paolo,* the Internal Revenue Service ("IRS") held a nondischargeable tax claim and did not object to a plan that purported to pay the claim over time. The debtor argued that the IRS was precluded under the doctrine of res judicata from collecting its debt outside the plan. The Tenth Circuit stated: "While principles of res judicata apply generally to bankruptcy proceedings, the plain language of [sections] 1141 and 523 forbid the application of those principles to the facts of this case." *De-Paolo,* 45 F.3d at 376. *DePaolo* is factually similar to this case, in that the plan at issue did not contain a specific provision enjoining collection of nondischargeable debts. The creditor did not object to the plan. The court *DePaolo* court held that the plan's provisions purporting to pay the

---

**6.** The case which most strongly favors Debtor's position actually acknowledges the necessity of having any injunction provision set forth explicitly in a plan: *"Absent some re-*

*straint in the plan, the creditor would have the right to commence collection efforts including attachment of debtor's property." Mercado,* 124 B.R. at 803 (emphasis added).

creditor's debt in full over time did not prevent the creditor from exercising its rights outside the plan.

Likewise, in *Adelman,* the court held that "the holders of the nondischargeable claims are not bound by the provisions of a confirmed plan." *Adelman,* 90 B.R. at 1017–18. Similarly, the court in *Amigoni* held that confirmation of a plan does not enjoin future efforts to collect on nondischargeable debts, denying confirmation of plans which attempted to modify the payment schedule of nondischargeable criminal restitution obligations. *Amigoni,* 109 B.R. at 345; *see also In re Rideout,* 86 B.R. 523, 529 (Bankr.N.D.Ohio 1988) ("cases have held that the holder of a nondischargeable debt is not restricted from collecting the balance owed outside the Plan"). Both the *Amigoni* court and the *Adelman* court analyzed *In re Howell,* 84 B.R. 834 (Bankr.M.D.Fla.1988), a case cited extensively by Creditors in their briefs.[7]

In *Howell,* the debtors' modified plan contained a provision establishing monthly payments on a nondischargeable debt until payment in full. "The [d]ebtors admit that their intent in including this provision in the Modified Plan was to preclude [the creditor] from attempting to execute or collect on its nondischargeable judgment debt after confirmation of their plan." *Howell,* 84 B.R. at 835. The creditor objected to the extent the plan sought to prevent collection of the nondischargeable debt. The *Howell* court stated: "Under section 1141(a) of the Code, the holders of

the nondischargeable debts identified in § 1141(d)(2) are expressly excepted from those persons who are bound by the provisions of a confirmed plan ... Accordingly, there can be no doubt that a creditor who has a debt excepted from discharge under § 523 cannot be bound by the provisions of a confirmed plan." *Id.* at 836.[8]

In the relatively recent case of *United States v. Wood (In re Wood),* 240 B.R. 609 (C.D.Cal.1999), the district court reversed a bankruptcy court's entry of an injunction against post-confirmation efforts of the IRS to collect a non-dischargeable debt. The debtor in *Wood* set forth in his plan a payment arrangement for certain 1995 taxes. When the IRS commenced collection action outside the plan, the debtor sought an injunction. In ruling that an injunction was inappropriate, the district court noted that "the taxes were a nondischargeable debt under 11 U.S.C. §§ 1141(d)(2) and 523, and *thus could have been collected outside the plan in any event." Id.* at 609 (emphasis added). The district court further held that even if the bankruptcy court did have authority to enjoin collection of nondischargeable taxes outside the plan, no injunction could be entered absent specific findings that the collection activity would jeopardize the plan's success or frustrate the debtor's rehabilitation. *Id.* at 617.

### 3. Cases Permitting a Plan to Curb Collection Rights of Holders of Nondischargeable Claims

In his brief, Debtor relies heavily on two decisions: *Martin v. United States (In re*

---

**7.** The courts in *DePaolo, Adelman* and *Amigoni* also cite *United States v. Gurwitch (In re Gurwitch),* 794 F.2d 584 (11th Cir.1986) in support of their holdings. In *Gurwitch,* the IRS assessed additional penalties (after consummation of the plan) with respect to nondischargeable taxes that had been paid through the plan. The debtors objected, citing the res judicata effect of the confirmed plan and asserting equitable estoppel based on IRS's actions. The *Gurwitch* court rejected both arguments, stating that "inasmuch as these taxes are nondischargeable, a reasonable debtor should expect that the IRS will seek to enforce such claims." *Id.* at 586. *See*

also *Fein v. United States (In re Fein),* 22 F.3d 631, 633 (5th Cir.1994) (favorably citing *Grynberg* and *Gurwitch* and noting that "like any other holder of nondischargeable debt," the IRS was free to pursue the debtor outside bankruptcy).

**8.** The court further noted that although section 1141 prevents a creditor with a nondischargeable debt from being bound by the terms of a confirmed plan, that creditor is nevertheless entitled to participate in any distribution made under the plan to similarly situated creditors. *Id.*

*Martin)*, 150 B.R. 43 (Bankr.S.D.Cal.1993), *appeal dismissed*, 172 B.R. 644 (S.D.Cal. 1994) and *Mercado*, 124 B.R. at 799. Neither decision, however, is dispositive of the outcome in this case.

In *Mercado*, the court stated that "[t]here are two ways of viewing the scope of § 1141(d)(2). The broad view is that it excepts a nondischargeable debt from any effects of the plan. A narrower perspective is that the effect of § 1141(d)(2) should be limited to holding the debt nondischargeable. That is, the plan cannot discharge the debt, but the claimant may otherwise subject the debt to the provisions of a confirmed plan." 124 B.R. at 801. The *Mercado* court acknowledged: "Admittedly, the cases do not support the limited approach to § 1141(d)(2)." *Id.* at 803. Instead of following the cases favoring the broader interpretation, the *Mercado* court adopted the narrower approach. The *Mercado* court contended that an "expansive interpretation is inconsistent with the statutory language and imposes unwarranted limitations on debtors seeking to reorganize under Chapter 11." *Id.* at 802. As noted previously, however, *Mercado's* narrow interpretation of section 1141 renders meaningless the exceptions contained in subsections (a) and (c). Nevertheless, assuming *arguendo* that the legal conclusion in *Mercado* is correct, it is distinguishable and in fact supports Creditors' position. In *Mercado*, the debtor inserted a provision in its plan enjoining collection efforts by holders of nondischargeable debts; in contrast, the Debtor in this case placed no such provision in his Plan. The *Mercado* court acknowledged that "*[a]bsent some restraint in the plan, the creditor would have the right to commence collection efforts including attachment of debtor's property.*" *Id.* at 803 (emphasis added). No such restraint exists in this case, and under the language of *Mercado*, Creditors have the right to pursue collection activity outside the plan.[9]

In *Martin*, the court cited *Mercado* and stated in *dicta* that although a plan cannot discharge the debt, it may otherwise subject the debt to its provisions. 150 B.R. at 46. " 'Stated another way, § 1141(d)(2) preserves the right of a creditor holding a nondischargeable debt to full payment. It does not provide that the provisions of a confirmed plan cannot affect the rights of such a creditor...' " *Id.*, quoting *Mercado*, 124 B.R. at 801. In *Martin*, however, the IRS had stipulated in open court that the debtors would file tax returns for the relevant years, that the IRS would then file supplemental proofs of claim, and that the debtors could object to those amended claims. This agreement was incorporated into the terms of the confirmed plan. The IRS subsequently filed amended proofs showing no tax was due. Two and a half years later, the IRS issued notices of deficiency and commenced collection activity with respect to these taxes, even though it had filed the amended claims showing no tax was due. The bankruptcy court enjoined the collection activity, noting that the IRS had "submitted its claim to the jurisdiction of the court," and could not "unilaterally withdraw the jurisdiction by

9. The *Mercado* decision focuses on the power and authority of a bankruptcy court to approve a plan containing an injunction against collection activity. The authority of the bankruptcy court to enter such an injunction is not an issue before this panel, however. The issue raised by the bankruptcy court's order is whether the *Plan* precluded Creditors' collection efforts. As discussed elsewhere in this decision, the language of the Plan does not preclude such collection activity. Whether the bankruptcy court would, at a later date, have the authority to enjoin such collection activity pursuant to section 105 at the request

of Debtor is not a ripe issue for appeal, notwithstanding Creditors' argument that the bankruptcy court lacks jurisdiction to issue such an injunction.

In any event, notwithstanding Debtor's argument that the bankruptcy court can utilize its section 105 powers to issue an injunction "to carry out" the provisions of the Plan, the bankruptcy court made no finding that the assets which Creditors seek to seize are essential for performance of the Plan or that a postconfirmation levy would interfere with the orderly administration of reorganization.

employing unapproved, less confining procedures." *Martin,* 150 B.R. at 46. Obviously, the court found that the IRS was bound by procedures to which it had agreed.

In contrast to *Martin,* Creditors here never agreed to any procedure which would limit their ability to pursue their claim outside of bankruptcy, and in fact voted for the Plan only after Debtor filed an amendment acknowledging that their debt was nondischargeable. Rather, Creditors simply agreed to withdraw their objections to, and vote for, a plan that contained no provision limiting the procedures for pursuing their claim (unlike *Martin*). Therefore, assuming *arguendo* that *Martin* reached the correct legal conclusion in following *Mercado,* it is distinguishable from the case before this panel.

Under the facts of this case, (1) where Debtor did not specifically include an injunctive provision in his Plan, (2) where Debtor failed to dedicate his Non–Plan Assets to fund the Plan, and (3) where the Creditors did not take any action which should estop them from pursuing collection activity, the panel will follow *DePaolo* and the majority line of cases, and hold that the confirmed plan does not preclude Creditors from collecting their nondischargeable claim outside the bankruptcy. The bankruptcy court therefore should not have held that the terms of the Plan precluded efforts by Creditors to pursue their post-judgment remedies with respect to the nondischargeable portion of the Judgment.

**B. The Law Governing Interpretation of the Plan**

■■■■■ "A chapter 11 plan is a contract between the debtor and its creditors in which general rules of contract interpretation apply." *Aino v. Maruko, Inc. (In re Maruko, Inc.),* 200 B.R. 876, 881 (Bankr. S.D.Cal.1996), *citing Hillis,* 997 F.2d at 588, and *Affordable Housing,* 175 B.R. at 329. The law of the state in which the plan was confirmed governs its interpreta-

tion. *Hillis,* 997 F.2d at 588; *Affordable Housing,* 175 B.R. at 329.

■■■■■■ Under California law, a contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal. Civ.Code § 1636. The intention of the parties is to be ascertained from the language of the contract; the language is to govern the contract's interpretation, if the language is clear and explicit and does not involve an absurdity. Cal. Civ.Code § 1638. In this case, the Plan does not include any language enjoining collection activity by holders of nondischargeable claims, and the automatic injunction of section 524 did not apply. By virtue of its order, the bankruptcy court has essentially added an injunction provision to the Plan. In doing so, the court did not give effect to either the consequences flowing from the judgment of nondischargeability or the mutual intention of the parties, which is to be ascertained from the language of the Plan. The language of the Plan did not provide for such an injunction, and the bankruptcy court erred in holding that the terms of the plan prevented such collection activity.

## VI.

### CONCLUSION

Debtor did not cite any California authority for the proposition that a contract providing for payment from a particular source, without more, precluded other collection activity; hence, nothing in the Plan binds Creditors not to pursue sources outside the Plan. Because the Plan did not contain a provision enjoining collection activity by Creditors with respect to their nondischargeable claims, the bankruptcy court erred in holding that Creditors were precluded from pursuing their collection rights outside the plan. Accordingly, we REVERSE.