

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HARBOR CUSTOM DEVELOPMENT,<br>INC., et al.,<br>　　　　　　　　Debtor. | BAP No.  WW-24-1144-GLS<br><br>Bk. No. 3:23-bk-42180-MJH |
| BANK UNITED, N.A.,<br>　　　　　　　　Appellant,<br>v.<br>HARBOR CUSTOM DEVELOPMENT,<br>INC.; TANGLEWILDE, LLC,<br>　　　　　　　　Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Mary Jo Heston, Bankruptcy Judge, Presiding

Before: GAN, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

After the bankruptcy court confirmed the joint chapter 11[1] plan of

Harbor Custom Development, Inc. ("HCDI") and several related debtors,

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

including Tanglewilde, LLC ("Tanglewilde"), creditor BankUnited, N.A. ("BankUnited") filed a motion to enforce a court-approved settlement regarding treatment of its claim. The confirmed plan provided for a sale of Tanglewilde's multifamily real property (the "Tanglewilde Property"), with a secured lender carve out of $300,000 for estate professionals. BankUnited argued that the carve out was subject to the division of proceeds outlined in its settlement agreement. Interpreting the language of the plan and settlement agreement, the bankruptcy court held that the carve out was not subject to the settlement agreement.

We agree with the bankruptcy court's interpretation. The carve out was voluntarily offered by the secured lender from proceeds of its lien; it was not "net proceeds" of the sale and not subject to the division of proceeds under the BankUnited settlement. Accordingly, we AFFIRM.

## FACTS[2]

HCDI is a real estate development company located in Tacoma, Washington. It invested in and managed real estate assets and projects through itself and several wholly owned limited liability companies. In December 2023, HCDI and six subsidiaries (collectively "Debtors") filed chapter 11 petitions.[3]

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the debtors' bankruptcy cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] HCDI owned debtors Belfair Apartments, LLC; HCDI at Semiahmoo LLC; Beacon Studio Farms LLC; HCDI Bridge View, LLC; HCDI FL Condo LLC; and Pacific

Debtors had approximately $106.8 million in total funded debt obligations as of the petition date, consisting of approximately $14.3 million in outstanding principal under a revolving credit agreement with BankUnited, secured by a lien on substantially all HCDI's personal property, $58.2 million in aggregate principal amounts secured by construction loans against real property, and approximately $34.3 million in land loans against real property.

## A. The BankUnited Settlement

BankUnited asserted a security interest on approximately $3.2 million of cash held by HCDI on the petition date. The bankruptcy court granted HCDI's motion for use of cash collateral, it provided BankUnited with replacement liens, and to the extent of any diminution of its interest, it provided BankUnited with a lien on all distributions and proceeds from Tanglewilde and a § 507(b) claim.

HCDI disputed the extent and validity of BankUnited's lien and sought to disallow part of its claim. BankUnited filed a counterclaim, and after a settlement conference, Debtors and BankUnited executed a Settlement and Claim Treatment Agreement (the "BankUnited Settlement").

---

Ridge CMS, LLC, who each filed concurrent chapter 11 petitions, and it owned non-debtor HCDI Wyndstone LLC. Tanglewilde filed a chapter 11 petition in February 2024, and the court ordered joint administration of all eight cases. As of the petition date, HCDI owned, either directly or through its subsidiaries, fifteen communities containing approximately 1,232 lots or units in various stages of development.

The BankUnited Settlement provided that BankUnited would have an allowed claim of $14,345,789 of which $3,535,000 was entitled to priority as a § 507(b) claim. BankUnited agreed to accept a combination of cash and real estate in satisfaction of its claim and to support confirmation of the plan, which proposed payments to BankUnited from the sale of certain multifamily real estate, including the Tanglewilde Property.

Under the BankUnited Settlement, which the bankruptcy court approved under Rule 9019, sale proceeds from the Tanglewilde Property that were payable to HCDI on account of its prepetition advances and capital contributions would be directly paid to BankUnited. Section 12 of the BankUnited Settlement provided that these proceeds were subject to the "BankUnited Carve Out," which allowed HCDI to retain a portion of net proceeds to pay professional fees. Section 12 further provided:

> For the Multi Family Properties, any net proceeds received by the Debtors on account of 506(c) claims or other administrative claims against Belfair Apartments, Tanglewilde, Bridge View or Pacific Ridge shall be subject to the BankUnited Carve Out as set forth above, such that 80% of the recoveries will be paid to BankUnited and 20% to HCDI for payment of professional fees . . . . BankUnited shall have no obligation to the Debtors for any other costs or expenses (including professional fees), whether pursuant to Section 506(c) or otherwise.

**B.    The joint chapter 11 plan and confirmation**

Debtors negotiated settlements with their other creditors and in June 2024, the bankruptcy court confirmed Debtors' joint chapter 11 plan. The

plan provided for sales of Debtors' properties, payment of secured claims, and distributions from proceeds in accordance with the "Waterfall Recovery" and the BankUnited Settlement, which were attached as exhibits and incorporated.

Regarding the Tanglewilde Property, secured creditor Buchanan Mortgage Holdings ("Buchanan") agreed to reduce its asserted prepetition default interest and to designate $300,000 from its claim as a "Carveout" (the "Buchanan Carveout"). The plan defined "Carveout" as "amounts set aside by a Secured Creditor from a portion of its collateral for the benefit of the Professional Fund that would not otherwise be available for Plan Distributions."

The Waterfall Recovery attached to the plan showed an expected sale of the Tanglewilde Property generating distributable proceeds of approximately $40 million. It indicated payment to Buchanan of approximately $38 million with a $300,000 carve out paid by Buchanan, and remaining proceeds split between BankUnited and HCDI pursuant to the BankUnited Settlement. No party appealed the confirmation order, and the sale of the Tanglewilde Property closed on July 30, 2024, for approximately $40 million.

## C.  BankUnited's motion to enforce

After confirmation, Debtors filed final applications for compensation of estate professionals. BankUnited filed a limited objection to the fee applications, and it filed a motion to enforce the BankUnited Settlement

and plan. It argued that the $300,000 Buchanan Carveout should be subject to the BankUnited Settlement which provided for a split of any recovery for administrative claims on an 80-20 basis. Because the Buchanan Carveout was for professional fees, which are administrative claims, BankUnited maintained it was entitled to $240,000 of that amount.

The bankruptcy court approved the fee applications but required Debtors to hold the Buchanan Carveout pending further orders of the court, and it approved a briefing schedule pertaining to BankUnited's objection.

BankUnited filed a supplemental brief arguing that the BankUnited Settlement applied to all "proceeds" from the sale of the Tanglewilde Property, and the plan provided for "net proceeds" of the sale—defined as "the proceeds after the costs of any Free and Clear Sale (including commissions and other closing costs) of any Property"—to be paid in accordance with the Waterfall Recovery. Thus, it argued, the amounts received from the Buchanan Carveout had to be distributed in accordance with the BankUnited Settlement.

In response, Debtors argued that the BankUnited Settlement required an 80/20 split only on recoveries that were: (1) net proceeds; (2) received by the Debtors; (3) on account of § 506(c) claims or other administrative claims; and (4) made against one of the Debtor sub-entities. They asserted that none of these elements were satisfied because the Buchanan Carveout was negotiated from Buchanan's collateral and, consequently, was not sale

proceeds received by the Debtors. There was no surcharge of the Tanglewilde Property under § 506(c), and no Debtor entity asserted an administrative claim against Tanglewilde or received net proceeds on account of such claim.

According to Debtors, secured creditor carve outs are not property of the estate and can be properly earmarked for payment of professional fees. They argued that section 12 of the BankUnited Settlement was never intended to apply to professional fund carve outs. Instead, it was designed to protect BankUnited from diminished distributions caused by HCDI's potential surcharge claims or other administrative claims asserted against Tanglewilde.

The bankruptcy court construed "net proceeds" in section 12 of the BankUnited Settlement to mean all amounts received "less the costs of sale and payments necessary to release liens, which are then distributable to pay unsecured claims." Because the Buchanan Carveout arose directly from funds paid on account of its secured claim, it was not net proceeds and was paid ahead of the amounts payable under the Waterfall Recovery or the BankUnited Settlement. The court held that the Buchanan Carveout was a voluntary payment to the Debtors' Professional Fund and not a payment on account of an administrative claim or surcharge asserted by the Debtors. The court entered an order denying BankUnited's motion to enforce and allowing Debtors to distribute the Buchanan Carveout to their professionals. BankUnited timely appealed.

7

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err by denying the motion to enforce the BankUnited Settlement and holding that the Buchanan Carveout was not subject to the BankUnited settlement?

## STANDARD OF REVIEW

A confirmed chapter 11 plan is interpreted as a contract under applicable state law, and we review its interpretation de novo. *Pioneer Liquidating Corp. v. United States Tr. (In re Consol. Pioneer Mortg. Entities)*, 248 B.R. 368, 375 (9th Cir. BAP 2000). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

According to BankUnited, the term "net proceeds" in section 12 of the BankUnited Settlement must be interpreted to include all amounts received by Debtors from the sale of the Tanglewilde Property after payment of costs and the secured claim. It maintains that the BankUnited Settlement's use of the term "net proceeds" was unqualified and,

regardless of its definition, the Buchanan Carveout was proceeds of the sale.[4]

## A. Law governing interpretation of the plan and settlement

Because the confirmed chapter 11 plan is a contract between Debtors and their creditors, the general rules of contract interpretation apply. *See Dolven v. Bartleson (In re Bartleson)*, 253 B.R. 75, 84 (9th Cir. BAP 2000) (citations omitted). The BankUnited Settlement, which was incorporated into the plan, is also a contract. *See Com. Paper Holders v. Hine (In re Beverly Hills Bancorp)*, 649 F.2d 1329, 1332 (9th Cir. 1981). The law of the state in which the plan was confirmed governs its interpretation. *See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993).

Washington follows the objective manifestation theory of contracts. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005) (en banc). Under Washington law, "we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Id. (*citing *Max L. Wells Tr. v. Grand Cent. Sauna & Hot Tub Co. of Seattle*, 815 P.2d 284, 290 (Wash. App. 1991)). We give words in a contract "their ordinary, usual, and

---

[4] BankUnited suggests that Debtors orchestrated a scheme to avoid splitting the proceeds with BankUnited by "grossing up" the Buchanan secured claim then purporting to carve out funds from the inflated claim amount. The Buchanan claim was allowed through the confirmed plan and BankUnited did not appeal. Thus, we do not consider any argument pertaining to the Buchanan claim amount or propriety of its treatment under the plan.

popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* (citing *Universal/Land Constr. Co. v. Spokane*, 745 P.2d 53, 55 (Wash. App. 1987)).

**B.    The confirmed plan does not require the Buchanan Carveout to be subjected to the division of proceeds in the BankUnited Settlement.**

BankUnited argues that "net proceeds" must include all amounts received by HCDI after costs of the sale and payment of Buchanan's secured claim. It contends that regardless of how the Buchanan Carveout was defined in the plan, the funds were received by HCDI from sale proceeds of the Tanglewilde Property for payment of administrative claims, and therefore, the funds must be split in accordance with section 12 of the BankUnited Settlement. We disagree.

Section 12 states that "any net proceeds received by the Debtors on account of 506(c) claims or other administrative claims against . . . Tanglewilde . . . shall be subject to the BankUnited Carve Out . . . such that 80% of the recoveries will be paid to BankUnited and 20% to HCDI for payment of professional fees . . . ."

The Buchanan Carveout was not "net proceeds" on account of a surcharge or other administrative claim against Tanglewilde. It was a negotiated, voluntary payment from Buchanan's secured claim, defined under the plan as "amounts set aside by a Secured Creditor from a portion of its collateral for the benefit of the Professional Fund that would not

10

otherwise be available for Plan Distributions." It was not "net proceeds" from the sale because it was allocated from a portion of Buchanan's secured claim.

Carve outs from secured liens are not prohibited under the Bankruptcy Code. *See In re KVN Corp.*, 514 B.R. 1, 6 (9th Cir. BAP 2014) ("A carve-out agreement is generally understood to be an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out its lien position. There is no per se rule that bans this type of contractual arrangement . . . ." (cleaned up)); *E. Coast Miner LLC v. Nixon Peabody LLP (In re Licking River Mining, LLC)*, 911 F.3d 806, 814 (6th Cir. 2018) ("The Code provisions governing priorities of creditors apply only to distributions of property of the estate. The Code does not govern the rights of creditors to transfer or receive non-estate property."); *Off. Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1313 (1st Cir. 1993) ("While the debtor and the trustee are not allowed to pay nonpriority creditors ahead of priority creditors, creditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including to share them with other creditors." (citations omitted)).

The existence and operation of the Buchanan Carveout was disclosed and defined in the plan and the Waterfall Recovery, neither of which directed that the Buchanan Carveout would be net proceeds received by HCDI. In contrast, the plan states that the Buchanan Carveout was to be

11

paid to the "Professional Fund" and "would not otherwise be available for Plan Distributions." Although "Professional Fund" is undefined in the plan, we understand it to mean a reserve of funds to pay approved requests for professional compensation. But regardless of whether the Buchanan Carveout was paid to Debtors for distributions to professionals, or even if it was estate property, it was not "net proceeds" of the Tanglewilde sale because it came from Buchanan's secured claim.

Moreover, BankUnited does not explain how the Buchanan Carveout was received by HCDI "on account" of a § 506(c) claim or another administrative claim against Tanglewilde. The Buchanan Carveout was not subject to section 12 merely because it was used to pay professional fees. Section 12 requires an 80/20 division of net proceeds received by Debtors on account of administrative claims or surcharges which they asserted against Tanglewilde. BankUnited does not identify any such surcharge or administrative claim asserted by HCDI or any other Debtor, and we see none. Thus, even if we interpreted the Buchanan Carveout to constitute "net proceeds," it was not "received by Debtors on account of 506(c) claims or other administrative claims against . . . Tanglewilde."

We understand that BankUnited's subjective understanding of the BankUnited Settlement was that any funds received by HCDI from the sale of the Tanglewilde Property would be payable to BankUnited and subject to the carve out in section 12. But the plain language of the agreement confirms that only net proceeds payable to HCDI on account of its claims

12

against Tanglewilde were subject to the division. We agree with the bankruptcy court that the Buchanan Carveout was a voluntary payment which Buchanan agreed to contribute to the Debtors' professional fund from its secured claim. It was not "net proceeds" for purposes of the BankUnited Settlement, and it was not received by Debtors on account of administrative claims or surcharges against the Tanglewilde Property.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order denying BankUnited's motion to enforce the BankUnited Settlement.