FILED

NOT FOR PUBLICATION

Mar 5 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-13-1333-PaTaKu |
| | ) | |
| ALAMEDA INVESTMENTS, LLC, | ) | Bankr. No. 09-10348-PC |
| | ) | |
| Debtor. | ) | |
|_____| ) | |
| | ) | |
| PHOENIX, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| THE ALAMEDA LIQUIDATING TRUST; | ) | |
| AKT INVESTMENTS, INC., | ) | |
| | ) | |
| Appellees. | ) | |
|_____| ) | |

Argued and Submitted on February 20, 2014
at Pasadena, California

Filed - March 5, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Peter H. Carroll, Chief Bankruptcy Judge, Presiding

_____

Appearances:    Chris D. Kuhner of Kornfield, Nyberg, Bendes &
Kuhner, PC, argued for appellant Phoenix, LLC;
Aaron B. Bloom argued for appellee Alameda
Liquidating Trust.

_____

Before: PAPPAS, TAYLOR and KURTZ, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

Appellant Phoenix, LLC ("Phoenix") appeals the order of the bankruptcy court determining that appellee, the Alameda Liquidating Trust ("the Trust"), succeeded to the entire interest in West Lakeside, LLC ("West Lakeside") held by chapter 11[2] debtor Alameda Investments, Inc. ("Debtor"), and that the Trust enjoys the same Alameda membership interest in West Lakeside as Debtor had prior to bankruptcy. We AFFIRM the bankruptcy court's order.

**FACTS**

The Woodside Group, LLC ("Woodside") and its affiliates, including Debtor, collectively formed one of the largest privately held homebuilders in the United States. Together and with its subsidiaries, Woodside engaged in homebuilding operations in eight states. Woodside used Debtor as a "land bank" to purchase, hold, and secure title to land that would then be transferred to another subsidiary for development.

Debtor and Phoenix each owned a 50 percent membership interest in West Lakeside, a California LLC; AKT Development Co. ("AKT"), an entity apparently related to Phoenix,[3] was the manager of West Lakeside.

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] Angelo K. Tsakopoulos is the manager and owner of AKT, and the manager and controlling member of Phoenix (58.4% of Phoenix membership interests owned by Tsakopoulos or his controlled family trust).

-2-

In May of 2003, Debtor, Phoenix, and AKT executed an "Operating Agreement" for West Lakeside, an LLC created to facilitate development of a 133-acre tract of land in Sacramento County, California. Of note for this appeal is ¶ 16.1.1 of the Operating Agreement, entitled "Prohibition Against Transfer," which states in part:

> Basic Prohibitions. Alameda has entered into this Agreement because of the trust and confidence it places in Angelo K. Tsakopoulos, the sole owner of AKT, and AKT and Phoenix have entered into this Agreement because of the trust and confidence they place in Alameda and its affiliates. . . . In light of the parties' reliance on the continuing interests of the other Members . . . none of the following sales, transfers, assignments or hypothecations (individually and jointly, a "Transfer"), shall be permitted without the prior written approval of a Majority of the Members, and any such attempted Transfer shall be void and ineffectual: (i) a Transfer, directly or indirectly, for consideration or gratuitously, by a Member or its successors or assigns, of all or any portion of its Member Interest or Economic Interest; (ii) a Transfer of beneficial interest of a Member to any other individual or entity other than its constituent owners as of the date of the execution of this Agreement; or (iii) a Transfer which results in a change in the "Principal Owner" of the Member or Member Group, as applicable.

Article XXI of the Operating Agreement also provides two pertinent definitions:

> "Economic Interest" shall mean the right to receive distributions of the company's assets and all allocations of income, gain, loss, deduction, credit and similar items from the Company pursuant to this Agreement and the Act, but shall not include any other rights of a Member, including, without limitation, the right to vote or participate in the management, or, except as provided in Section 17106 of the Corporations Code, any right to information concerning the business and affairs of the Company.

> "Member Interest" means a Member's entire interest in the Company, including the Member's Economic Interest, the right to vote on or participate in the management, and the right to receive information concerning the

-3-

business and affairs of the Company.

Involuntary chapter 11 petitions were filed against Woodside and 184 of its affiliates, not including Debtor, on August 20, 2008.  Orders for relief were entered in those cases on September 16, 2008.  In re Woodside Group, LLC, et al., case no. 08-20682.  Debtor, in turn, filed a voluntary chapter 11 petition on January 9, 2009.  On January 16, 2009, the bankruptcy court ordered that Debtor's bankruptcy case be jointly administered with the cases of Woodside and its affiliated debtors.

On November 25, 2009, the bankruptcy court confirmed the Second Amended Joint Plan of Reorganization of Woodside Group, LLC and Affiliated Debtors (the "Plan").  Debtor and its assets were dealt with in the Plan, which became effective at the close of business on December 31, 2009.

The Plan established the Trust in Plan § 6.3.1.  The primary purpose of the Trust is "liquidating and distributing [Debtor's] assets," according to the Plan.  The assets to be transferred to the Trust are generally described in Plan § 6.3.2:

> Except as specifically set forth in the Plan, all of [Debtor's] right, title and interest in and to the Alameda Trust Assets shall be, and shall be deemed to be, irrevocably transferred, absolutely assigned, conveyed, set over and delivered to the [Trust], in trust to and in trust for the Alameda Trust Beneficiaries[.]

The "Alameda Trust Assets" are defined at Plan § 1.22 to include: "All assets of Alameda and its Estate of any kind, except the claims being assigned to the Reorganizing Debtors[.]"  The Alameda Trust Beneficiaries are defined in Plan § 1.23 to include the holders of claims against Alameda, but not the other

-4-

affiliated debtors.

From 2009 through mid-2011, the Trust and Hugh Scheffy, the Liquidating Trustee, apparently were involved in the management of West Lakeside. According to the declaration of the Liquidating Trustee, he continued to receive operating reports concerning West Lakeside until June 2011, and participated in discussions with the manager of West Lakeside, AKT, regarding the settlement strategy of a pending lawsuit. Natomas Unified School Dist. v. Steiner, Sacramento Super. Ct. Case no. 34-2009-00058030 (the "NUSD Lawsuit"). The Liquidating Trustee, however, alleges that, beginning in November 2011, AKT, as manager of West Lakeside, started to question whether the Trust had voting rights in West Lakeside, or was instead the holder of only an economic interest. Eventually, West Lakeside and AKT ceased to provide operating reports to the Liquidating Trustee or to involve the Trust in management of its operations.

On June 5, 2013, the Trust filed a Motion for Order Determining that Membership Interest in West Lakeside LLC was Uneffected by Plan in the bankruptcy court. In it, the Trust argued that the Plan transferred Debtor's Membership Interest in West Lakeside to the Trust. AKT responded to this motion, asserting that, in the absence of an express court order, Debtor's Membership Interest could not be transferred to the Trust without the consent of a majority of members of West Lakeside, so that neither the plan, nor the bankruptcy court's Confirmation Order, could effectively transfer Debtor's Membership Interest to the Trust. Phoenix also filed a response to the motion, essentially repeating the same arguments as AKT.

-5-

The Trust replied to both responses on June 5, 2013, repeating its earlier arguments, disputing the allegations of AKT and Phoenix, and suggesting that it would be prejudiced if it was stripped of its voting rights and other non-economic rights in West Lakeside.

The bankruptcy court heard extensive argument regarding the motion and thereafter entered a Memorandum Decision on June 25, 2013. In it, the court ruled that: (1) the Operating Agreement was not an executory contract; (2) all interests of Debtor in West Lakeside were transferred to the Trust through confirmation of the plan; (3) § 541(c)(1)(A) prevented the enforcement of any anti-assignment provisions of the Operating Agreement or Cal. Corp. Code § 17301(a)(1); (4) the Liquidating Trust is a representative of the bankruptcy estate within the meaning of § 1123(b)(3)(B); and (5) therefore, the Trust enjoyed the same Membership Interest in West Lakeside that Debtor had prior to filing its bankruptcy petition.

The bankruptcy court entered an order granting the relief requested in the Trust's motion on July 3, 2013. Phoenix filed a timely appeal.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred in determining that the Trust succeeded to all of Debtor's interest in West Lakeside.

**STANDARDS OF REVIEW**

A bankruptcy court's interpretation of the Bankruptcy Code is reviewed de novo. Samson v. W. Capital Partners, LLC (In re Blixseth), 684 F.3d 865, 869 (9th Cir. 2012).

The bankruptcy court's interpretation of the terms of a confirmed plan is, in essence, an interpretation of its own order, which we review under the abuse of discretion standard. JCB, Inc. v. Union Planters Bank, N.A., 539 F.3d 862, 869 (8th Cir. 2008). A bankruptcy court's interpretation of its own orders is reviewed for abuse of discretion and to which we owe substantial deference. Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011). The bankruptcy court abuses its discretion when it misapplies the correct legal standard or if its factual findings are illogical, implausible or without support from evidence in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc).

**DISCUSSION**

**I.**

**The bankruptcy court did not err in determining that Plan § 8.4 did not limit the Trust's interest in West Lakeside to an economic interest.**

As an initial matter, Phoenix argues in this appeal that the Operating Agreement prohibited the transfer of Debtor's Membership Interest and the Economic Interest to any third party without the consent of a majority of West Lakeside's members. Phoenix Op. Br. at 3. For support, Phoenix cites to § 16.1.1 of the Operating Agreement, quoted at length, above. Phoenix also maintains that Plan § 8.4 "expressly limits the Trust's interest, if any, in West Lakeside to an economic interest." Plan § 8.4

-7-

provides:

> Effect of Confirmation Order. The Confirmation Order shall constitute an order of the Bankruptcy Court: (i) approving, as of the Effective Date, the assumption or rejection by the Reorganized Debtors, Liberty or Alameda, as the case may be, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all of executory contracts and unexpired leases identified under this Article 8 of the Plan; and (ii) that any provisions of a limited liability company agreement or operating agreement of a limited liability company or similar entity which purports to restrict the transfer of an economic interest in such entity to one of its members which is one of the Debtors herein, or its assignee, is invalidated as an "ipso facto" clause under Section 365(e) of the Bankruptcy Code, to the extent that Section 365 applies.

Phoenix notes that Paragraph (F)(3) of the Confirmation Order uses identical wording to describe the effect of plan confirmation on Debtor's executory contracts or unexpired leases.

Based upon these provisions in the Operating Agreement, Plan, and Confirmation Order, Phoenix reasons: "Since the plan and the Confirmation Order invalidated the Operating Agreement only with respect to the otherwise prohibited transfer of the economic interest, and both documents are completely silent as to the Membership Interest, it must follow that any purported transfer of the Membership Interest was and remains prohibited, void and of no force or effect." Phoenix Op. Br. at 4.

In response to Phoenix's argument that Plan § 8.4 expressly limited the transfer to the Trust of the economic interest of the estate in West Lakeside, the bankruptcy court stated:

> [B]y their respective terms, Section 8.4 and paragraph (F)(3) of the Confirmation Order deal specifically and exclusively with executory contracts and unexpired leases. Having determined that the Operating Agreement is not an executory contract, the court finds Section 8.4 of the Plan and paragraph (F)(3) of the Confirmation Order inapplicable to the Operating

-8-

Agreement.

Memorandum Decision at 9. In our view, the bankruptcy court's analysis is sound and clearly supported by the record and case law. In its Memorandum Decision, the court concluded that the Operating Agreement was not an executory contract. Phoenix has not appealed that conclusion. Plan § 8.4 is part of Article VIII of the Plan, headed "Executory Contracts and Unexpired Leases." Not surprisingly, it directly references § 365, which defines the rights and obligations of parties solely with respect to a debtor's executory contracts and unexpired leases.[4] Therefore, because § 8.4 of the Plan deals only with executory contracts, and since the Operating Agreement is not an executory contract, § 8.4 does not support Phoenix's argument.

A chapter 11 plan is a contract, and courts look to state law rules of contract interpretation to determine its meaning. Dolven v. Bartleson (In re Bartleson), 253 B.R. 75, 84 (9th Cir. BAP 2000) (holding that the law of the state in which the plan was confirmed governs its interpretation.). This plan was confirmed in California, which has a comprehensive system of statutory and case law relating to contract interpretation. According to Cal. Corp. Code § 1641, "Effect [is] to be given to every part of contract." The California Supreme Court has

_____

[4] "Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease[.]" § 365(e)(1). Section 365 exclusively addresses executory contracts and unexpired leases.

interpreted this statute "to disfavor constructions of contractual provisions that would render other provisions surplusage." Boghos v. Certain Underwriters of Lloyds of London, 36 Cal.4th 495, 503 (2005).

Phoenix's construction of Plan § 8.4 ignores the context of Article VIII, which only addresses executory contracts and unexpired leases. Phoenix's approach also renders meaningless the plan's explicit reference to § 365 in Plan § 8.4.

Cal. Civ. Code § 1641 must be read in conjunction with Cal. Code Civ. Proc. § 1858 (where there are several provisions or particulars in a legal instrument, such a construction is, if possible, to be adopted as will give effect to all). Phoenix's analysis completely ignores Plan § 6.3.2, which provides:

> [A]ll of Alameda's right, title and interest in and to the Alameda Trust Assets, shall be, and shall be deemed to be, irrevocably transferred, absolutely assigned, conveyed, set over and delivered to the Alameda Liquidating Trust, in trust to and in trust for the benefit of the Alameda Trust Beneficiaries for the uses and purposes stated herein and in the Alameda Liquidating Trust Agreement.

Precisely the same words are used in Paragraph (C) of the Confirmation Order.

Cal. Civ. Code § 1644 provides that "The words of a contract are to be to be understood in their ordinary and popular sense[.]" S. Pac. Transportation Co. v. Santa Fe Pac. Pipelines, Inc., 74 Cal.App.4th 1232, 1238 (1999). Phoenix's argument is inconsistent with Cal. Civ. Code § 1644 because it ignores the plain meaning of Plan § 8.4, that it only applies to executory contracts and unexpired leases.

Cal. Civ. Code § 1650 provides that specific provisions in

-10-

an agreement prevail over general provisions that are inconsistent with it.  <u>Jackson v. Donovan</u>, 215 Cal.App.2d 685, 688 (1963).  Plan § 8.4 relates to all of the hundreds of executory contracts engaged in by Woodside and its affiliates.  Plan § 6.3.2, on the other hand, specifically deals with the interests of the Trust.  Plan § 6.3.2 prevails over Plan § 8.4.

For all these reasons, we conclude that the bankruptcy court did not abuse its discretion in ruling that Plan § 8.4 did not limit the Trust's interest in West Lakeside to an economic interest, nor did it abuse its discretion in applying its analysis of § 8.4 to the identical wording in ¶ F(3) of the Confirmation Order.

**II.**

**The bankruptcy court did not err in ruling that assignment of the estate's interests in Alameda to the Liquidating Trust was not a transfer to a third party, but rather an assignment to a representative of the estate.**

After concluding that the plan provisions and Confirmation Order concerning § 365 were inapplicable, the bankruptcy court turned to § 541(c), asking whether the plan's transfer to the Trust of the bankruptcy estate's interest in West Lakeside failed because it violated the Operating Agreement and the provisions of Cal. Corp. Code 17301(a).[5]

---

[5]  "Membership Interests; economic interests, assignments, vote; rights and liabilities of assignees; duties and liabilities of assignors.  (A) Except as provided in the articles of organization or the operating agreement: (1) a membership interest or an economic interest is assignable in whole or in part, provided, however, that no membership interest may be
(continued...)

The parties do not dispute that certain tenets of bankruptcy law apply to this case. First, they acknowledge that, under § 541(a)(1), the filing of a bankruptcy petition creates an estate, comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." In other words, Debtor's interests in West Lakeside became property of its bankruptcy estate when it commenced its case.

Second, the parties agree that § 541(c)(1),[6] in turn, enables the bankruptcy estate to take a debtor's assets free and clear of prepetition contractual or statutory restrictions on transfer. Fursman v. Ulrich (In re First Protection, Inc.), 440 B.R. 821, 830 (9th Cir. BAP 2010). Indeed, at oral argument before the Panel, counsel for Phoenix conceded that, through the operation of § 541(c)(1), all of Debtor's prebankruptcy rights in West Lakeside, both management and economic, became part of the Debtor's bankruptcy estate upon the filing of the bankruptcy petition, without regard to any restrictions on transfer of the interests under either the Operating Agreement or state law.

While Debtor's interest in West Lakeside came into the

---

[5](...continued) assigned without the consent of a majority in interest of the members not transferring their interests, as required by Section 17303." Cal. Corp. Code 17301 (2003).

[6] "Property of the estate. . . . (c) (1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law — (A) that restricts or conditions transfer of such interest by the debtor[.]" § 541(c)(1)(A).

bankruptcy estate without limitations, Phoenix disputes whether the bankruptcy estate could transfer that asset to a third party unencumbered by the prepetition restrictions. In short, Phoenix's basic position is that, while § 541(c)(1) avoids transfer restrictions on Debtor's LLC interest from impacting the bankruptcy estate, those restrictions continue to be effective concerning transfer of the estate's interest to any third parties.

The bankruptcy court determined that neither the Operating Agreement's prohibition on transfer to a third party nor the state law was implicated in this case because the transfer of Debtor's interest in West Lakeside was not to a third party, but to an extension of the estate. The bankruptcy court ended its Memorandum Decision by concluding that:

> Even if the court were to find that either the Operating Agreement or [Cal. Corp. Code] § 17301(a) restricted the transfer of Alameda's interest in West Lakeside to a third party, the Alameda Liquidating Trust is not a third party. See Motor Vehicle Cas. Co. v. Thorp Insulation Co. (In re Thorp Insulation Co.), 677 F.3d 869, 890 (holding that the creation of a trust under a confirmed plan for the purposes of resolving certain asbestos-related claims was not a transfer to a third party in violation of contractual anti-assignment clauses in insurance contracts).

Memorandum Decision at 10. We agree with the bankruptcy court that the Operating Agreement and state law were not violated in this case.

As the bankruptcy court recognized, the Code provides two means by which a bankruptcy estate continues to be represented after a chapter 11 plan is confirmed; the estate would ordinarily

-13-

terminate. First, as is important here, § 1123(b)(3)(B)[7] provides a mechanism for a liquidating trustee to serve as a representative of the estate.

The Ninth Circuit recognized that a liquidating trustee may be appointed under § 1123(b)(3)(B), and that its duties are as specified in the plan. Liquidation Est. of DeLaurentiis Entm't Grp., Inc. v. Technicolor, Inc. (In re DeLaurentiis Entm't Grp, Inc.), 87 F.3d 1061, 1063 (9th Cir. 1996). Indeed, in a somewhat different context, the Ninth Circuit has described a liquidating trustee appointed by the court under a confirmed plan as the "functional equivalent" of a chapter 11 trustee, and a continuing representative of the bankruptcy estate:

> "[C]ourt appointed officers who represent the estate are the functional equivalent of a trustee." [Allard v. Weitzman (In re Delorean Motor Co.), 991 F.2d 1236, 1251(6th Cir. 1993)]. Here, as part of a liquidating Chapter 11 reorganization proceeding, the bankruptcy court chose the mechanism of a liquidating trust to liquidate and distribute the assets of the estate. The bankruptcy court retained jurisdiction over the case. In this context, the Liquidating Trustee is the "functional equivalent" of the bankruptcy trustee[.]

Beck v. Ft. James Corp. (In re Crown Advantage, Inc.), 421 F.3d 963, 973 (9th Cir. 2005); see also, Starzynski v. Sequoia Forest Indus., 72 F.3d 816, 820 (10th Cir. 1995) (noting that a liquidating trustee may be appointed under § 1123(b)(3)(B) to "retain and enforce any claim or interest belonging to the debtor

---

[7] "(b) Subject to subsection (a) of this section, a plan may– . . . (3) provide for– . . . (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest. § 1123(b)(3)(B) (emphasis added).

-14-

or the estate."); <u>Alary Corp. v. Sims (In re Assoc. Vintage Grp.)</u>, 283 B.R. 549, 560 (9th Cir. BAP. 2002) (explaining that "a plan may provide for the retention and enforcement, by a trustee or specially-appointed representative, of a claim belonging to the estate. 11 U.S.C. § 1123(b)(3)(B).").  In this case, through the confirmed plan, the Trust, acting through a liquidating trustee, is vested with authority under § 1123(b)(3)(B):

> On the Effective Date, the Alameda Liquidating Trustee shall be a representative of the Alameda Estate within the meaning of § 1123(b)(3)(B) of the Bankruptcy Code and shall have the rights and powers provided for in the Bankruptcy Code in addition to any rights and powers granted in the Alameda Liquidating Trust Agreement and herein.

Confirmed Plan, ¶ 6.3.1(d)[8]

The bankruptcy court also analogized the provisions of the confirmed plan in this case creating a liquidating trust to a

---

[8] The rights and powers granted to the Liquidating Trustee by the Confirmed Plan at § 6.3.1 are listed in the Liquidating Trust Agreement, including: "[T]he Liquidating Trustee shall have the authority, power and obligation, in his capacity as Liquidating Trustee or as Estate Representative, as applicable, to: (a) to receive and hold the Alameda Trust Assets, including the membership interests in the LLCs identified in Exhibit A hereto [which includes West Lakeside], and <u>exercise all rights as a member of the LLCs</u> . . . . (c) exercise rights of a [chapter 11] trustee under Sections 704 and 1106." Liquidating Trust Agreement at 3.2 (emphasis added). At oral argument, counsel for Phoenix was asked why it had not objected to the plan or provisions for a liquidating trust. Counsel replied that Phoenix was not involved in the case at that point. But Phoenix's position is disingenuous. Although Phoenix may not have formally entered the bankruptcy case until after the plan was confirmed, AKT, the manager of West Lakeside, owned and controlled by the same person who controlled Phoenix, was involved in the chapter 11 case and received notice of the disclosure statement, Plan and Liquidating Trust Agreement and did not raise any objection to them.

-15-

trust created for the benefit of creditors to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in claims related to asbestos under § 524(g)[9]. The bankruptcy court found that §§ 1123(b)(3)(B) and 524(g) were close cousins,[10] and therefore, case law holding that a § 523(g) trust was not a third party for purposes of the enforcement of anti-assignment clauses was persuasive. In particular, the bankruptcy court quoted from the Ninth Circuit's decision In re Thorpe Insulation Co., in which

---

[9] "After notice and hearing, a court that enters an order confirming a plan of reorganization under chapter 11 may issue, in connection with such order, an injunction in accordance with this subsection to supplement the injunctive effect of a discharge under this section. . . . (2)(B) The requirements of this subparagraph are that– (i) the injunction is to be implemented in connection with a trust that, pursuant to the plan of reorganization– (I) is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products[.]" § 524(g).

[10] Another recent case suggests that §§ 1123(b)(3)(B) and 524(g) may be closer than cousins and can actually be used in tandem. In In re Plan Insulation Co., 2012 Bankr. LEXIS 1716 (Bankr. N.D. Cal. March 16, 2012), the bankruptcy court confirmed a plan that included an asbestos trust under § 524(g). To avoid certain complex anti-assignment provisions for pursuing litigation, the court also appointed the asbestos trust as a liquidating trust under § 1123(b)(3)(B) "as estate representative. . . for purposes of pursuing" the litigation. Id. at * 14-15. See also In re W. Asbestos Co., 313 B.R. 456, 461 (Bankr. N.D. Cal. 2004) (confirming a plan with a § 524(g) trust, and noting that pursuant to § 1123(b)(3)(B), the asbestos trust could pursue litigation as a "representative of the estate").

-16-

the court examined the status of a § 524(g) liquidating trust:

> Here, however, the trust is not a third party. The order confirming the plan provides that the trust is appointed as the estate's representative. <u>The trust is part of the debtor's estate</u>. Instead of attempting to sell or assign anything to third parties, the debtor was attempting to transfer its rights and property to the trust [as] part of the estate.

Memorandum Decision at 18, <u>quoting</u> 677 F.3d at 890(emphasis added).

We think the bankruptcy court correctly concluded that the Operating Agreement and state law were not violated by the transfer of Debtor's interests in West Lakeside to the Trust. At bottom, there was no transfer out of the estate to a third party; rather, under § 1123(b)(3)(B), the Trust was merely a representative of the estate concerning enforcement of Debtor's interest in West Lakeside.

**CONCLUSION**

We AFFIRM the order of the bankruptcy court.

-17-