**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. CC-15-1321-FTaKu |
| ) | |
| ANDREW REDER, ) | Bk. No. 13-17664-MT |
| ) | |
| Debtor. ) | Adv. No. 14-01191-MT |
| _____ ) | |
| ) | |
| ANDREW REDER, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| PAUL FISHER; UNITED STATES ) | |
| TRUSTEE, WOODLAND HILLS,[**] ) | |
| ) | |
| Appellees. ) | |
| _____) | |

Argued and Submitted on February 19, 2016
at Pasadena, California

Filed – March 8, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Maureen A. Tighe, Bankruptcy Judge, Presiding

Appearances: Adam Apollo argued for Appellant Andrew Reder; Scott E. Shapiro of Appell Shapiro, LLP argued for Appellee Paul Fisher.

Before: FARIS, TAYLOR, and KURTZ, Bankruptcy Judges.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

[**] The United States Trustee did not file an answering brief or otherwise make an appearance in this appeal.

**INTRODUCTION**

Debtor/Appellant Andrew Reder appeals from the bankruptcy court's judgment determining that his $110,000 debt to Appellee Paul Fisher is nondischargeable pursuant to § 523(a)(2)(A).[1] Mr. Reder argues that the court erroneously rejected his argument that the confirmation of his chapter 11 plan discharged Mr. Fisher's debt despite a pending adversary proceeding to determine the dischargeability of that debt. Nothing in the relevant statutes or the confirmed plan supports such a conclusion. Accordingly, we AFFIRM.

**FACTUAL BACKGROUND**[2]

Mr. Reder and Mr. Fisher were longtime friends. In December 2010, while Mr. Reder was on a trip to Thailand, he contacted Mr. Fisher to request an urgent $110,000 loan to purchase a rubber tree farm. Mr. Reder told Mr. Fisher that he had the money to repay Mr. Fisher when he returned to the United States, but he could not access his account while abroad and needed the funds immediately. Mr. Fisher complied and wired Mr. Reder

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1-86.

[2] Mr. Reder's excerpts of record are incomplete, and both parties make reference to certain documents on the bankruptcy court's docket without providing the Panel with the actual document. We have exercised our discretion to review the bankruptcy court's docket, as appropriate. See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.), 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

2

$110,000.[3]

Thereafter, Mr. Reder refused to repay Mr. Fisher and put him off with various excuses. After numerous attempts to collect on the debt, Mr. Fisher had Mr. Reder sign a promissory note, in which Mr. Reder acknowledged the debt and agreed to repay the $110,000 within a year.

When Mr. Reder still failed to repay Mr. Fisher, Mr. Fisher began collecting information to support a lawsuit against Mr. Reder. He allegedly learned that Mr. Reder had told friends in Thailand that he had conned a "Jew Boy," i.e., Mr. Fisher; that Mr. Reder had spent money extensively renovating his house in Thailand; that Mr. Reder had purchased or put a down payment on a new truck; that Mr. Reder had only expended $12,000 of his own funds on the rubber tree farm; that Mr. Reder had expended $8,000 on elective plastic surgery in Thailand; and that Mr. Reder had arranged a "sham" marriage to a Thai woman so that he could purchase the rubber tree farm.

In April 2012, Mr. Fisher filed suit against Mr. Reder in the superior court of Los Angeles. The superior court entered judgment in favor of Mr. Fisher for $135,670.44.

On December 11, 2013, Mr. Reder filed his chapter 11 petition. Mr. Reder thereafter filed his chapter 11 plan and a

---

[3] There was some dispute as to whether the $110,000 was a loan or investment. Mr. Fisher claimed that Mr. Reder represented that he could elect to have $55,000 returned and share in half of the proceeds of the farm, or receive the entire loan amount upon request. Mr. Reder claimed that Mr. Fisher was interested in investing in a rubber tree farm and put up the $110,000 as an investment. The bankruptcy court found Mr. Reder not credible and agreed with Mr. Fisher's version of events.

succession of amended plans. Mr. Fisher, proceeding pro se, objected to the confirmation of the first amended plan in a three-page letter detailing Mr. Reder's alleged fraud. In response, Mr. Reder argued that the objection was insufficient as a matter of law and moved to strike the unsupported statements therein.

On October 31, 2014, Mr. Fisher, proceeding pro se, initiated the underlying adversary proceeding against Mr. Reder.[4] He articulated the circumstances surrounding the alleged fraud and requested that the court deem the debt nondischargeable.

The bankruptcy court confirmed Mr. Reder's fourth amended plan (the "Plan"). Later, the bankruptcy court closed the bankruptcy proceedings, having found that the Plan had been fully implemented.

On August 17, 2015, the bankruptcy court held a trial on Mr. Fisher's nondischargeability claim in the adversary proceeding. Prior to commencing with trial, counsel for Mr. Reder argued that the trial was moot due to the prior confirmation of the Plan. He contended that Article VI of the Plan had already discharged Mr. Fisher's claim and precluded relitigation of that issue. Article VI, section A stated:

> Discharge. Upon completion of all payments under the Plan, the Debtor shall receive a discharge of all preconfirmation debts, whether or not the creditor filed a proof of claim, or accepts the Plan, unless the court orders otherwise. Such discharge will not discharge Debtor from any debts that are nondischargeable under § 523 or the obligations created

---

[4] Mr. Fisher's adversary complaint may have been filed after the deadline to file a complaint to determine dischargeability of certain debts, but Mr. Reder never raised this defense.

4

by this Plan.

The bankruptcy court denied Mr. Reder's oral motion to dismiss, holding that "§ 1141(d)(2) doesn't permit you to discharge debts that are nondischargeable under [§] 523. It specifically provides that a Chapter 11 discharge does not discharge an individual Chapter 11 from debts excepted from discharge under [§] 523."

At the conclusion of the day-long trial, the court held that the $110,000 debt was nondischargeable under § 523(a)(2)(A) and thereafter entered judgment in favor of Mr. Fisher. Mr. Reder timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(b)(1), and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred in holding that the $110,000 debt owed to Mr. Fisher is nondischargeable under § 523(a)(2)(A).

**STANDARD OF REVIEW**

We review "the bankruptcy court's interpretation of the Bankruptcy Code de novo and its factual findings for clear error[.]" Hedlund v. Educ. Res. Inst. Inc., 718 F.3d 848, 854 (9th Cir. 2013) (quoting Miller v. Cardinale (In re DeVille), 361 F.3d 539, 547 (9th Cir. 2004)).

///

///

///

5

**DISCUSSION**

**A.  The bankruptcy court did not err in holding that Mr. Fisher's adversary proceeding was not mooted by Plan confirmation.**

Mr. Reder's overarching argument on appeal is that, by virtue of Article VI of the Plan, confirmation of the Plan discharged Mr. Fisher's claim and precluded relitigation of the dischargeability issue.  We find no merit to Mr. Reder's argument and will not disturb the bankruptcy court's ruling.

**1.   The Plan did not trump §§ 1141(d)(2) and 523(a)(2).**

Mr. Fisher initiated his adversary proceeding against Mr. Reder under § 523(a)(2)(A), essentially alleging that Mr. Reder defrauded him out of $110,000.  Section 523(a)(2)(A) provides, in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt -
>
> . . .
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -
> >
> > > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

§ 523(a)(2)(A).

Section 1141 specifies the effects of confirmation of a chapter 11 plan.  Section 1141(a) provides that "provisions of a confirmed plan bind the debtor, . . . and any creditor . . . , whether or not such creditor . . . has accepted the plan." § 1141(a).  Subsection (a) must be read in conjunction with subsection (d)(2), which states that "[a] discharge under this

6

chapter **does not discharge a debtor** who is an individual **from any debt excepted from discharge under section 523** of this title." § 1141(d)(2) (emphases added).

It is well accepted in this circuit that the confirmation of a plan does not discharge an otherwise nondischargeable debt of an individual debtor, including § 523(a)(2) claims. See Comput. Task Grp., Inc. v. Brotby (In re Brotby), 303 B.R. 177, 189 (9th Cir. BAP 2003) ("Section 1141(d)(2) plainly limits the discharge of debts provided to individual debtors in § 1141(d)(1). The reference to § 1141(d)(2) in § 1141(a) makes it clear that **while all creditors are bound by the provisions of a confirmed plan, this binding effect cannot operate to discharge an otherwise nondischargeable debt**." (emphasis added)); Dolven v. Bartleson (In re Bartleson), 253 B.R. 75, 80 (9th Cir. BAP 2000) ("most courts interpreting section 1141 have concluded that a chapter 11 plan does not have a binding effect with respect to nondischargeable debts of an individual debtor" (citation omitted)).

Similarly, the Ninth Circuit has made clear that confirmation of a chapter 13 plan does not preclude post-confirmation litigation of nondischargeability claims.[5] It

---

[5] Section 1327(a) states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." There is no material difference between § 1327(a) and § 1141(a).

Section 1328 provides that the completion of a chapter 13 plan results in discharge "except any debt . . . of the kind
(continued...)

7

stated:

> We have recently observed that in the unique bankruptcy context, "the principle of res judicata should be invoked only after careful inquiry because it blocks unexplored paths that may lead to truth . . . ." Although confirmed plans are *res judicata* to issues therein, **the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding**, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor.

Enewally v. Wash. Mut. Bank (In re Enewally), 368 F.3d 1165, 1172-73 (9th Cir. 2004) (quoting Latman v. Burdette, 366 F.3d 774 (9th Cir. 2004)) (emphasis added). As in the present case, the bankruptcy court had confirmed the chapter 13 plan before deciding the adversary complaint. Id. at 1168. Regardless, the appellate court held that, "'if an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect.' Thus **a Chapter 13 plan confirmed while an adversary proceeding was pending would not have res judicata effect on the adversary proceeding**." Id. at 1173 (quoting Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995)) (emphasis added).

Mr. Reder completely fails to cite or discuss this Panel's relevant decisions. He cites Enewally, but he does not discuss it or recognize its effect on this case. Instead, his argument is based on his idiosyncratic interpretation of the language of § 1141 (and a court decision from another circuit which, as we

[5](...continued)
specified in . . . paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)." § 1328(a)(2). We perceive no substantive difference in the relevant chapter 11 and chapter 13 statutes.

explain below, Mr. Reder has mischaracterized).

He notes that § 1141(d)(2) says that a chapter 11 discharge does not discharge an individual debtor from any debt "excepted from discharge under section 523 . . . ." He argues that, because the statute speaks in the present tense, such a debt is discharged unless it **already has been held nondischargeable,** i.e., the court has already ruled that it is not dischargeable. We reject this argument for multiple reasons.

First, the language of § 1141(d)(2) will not bear the weight that Mr. Reder puts on it. If Congress intended the meaning that Mr. Reder advocates, § 1141(d)(2) would say that plan confirmation does not discharge an individual debtor from "any debts that the court has determined, on or before the entry of the confirmation order, are not discharged under § 523 . . . ." But Congress did not include these additional words, or anything like them, in § 1141(d)(2).

Second, the argument incorrectly conflates the confirmation order and the discharge order in an individual chapter 11 case. Section 1141(d)(1)(A) provides that the confirmation of a plan discharges certain debt. But a different rule applies if the debtor is an individual. In such a case, § 1141(d)(5)(A) provides that "unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge **any** debt provided for in the plan until the court grants a discharge on completion of all payments under the plan[.]" § 1141(d)(5)(A) (emphasis added). In other words, where the debtor is an individual, confirmation of the plan does not discharge any of the debtor's debts, let alone those debts that

9

are not dischargeable under section 523.

Thus, we reject the view that confirmation of the chapter 11 plan of an individual debtor discharges debts that are otherwise not dischargeable.

## 2. The court did not err in its interpretation of the Plan.

Mr. Reder also argues that Article VI of the confirmed Plan discharged Mr. Fisher's claim. We disagree.

In the first place, there is no material difference between the language of Article VI and the comparable provisions of § 1141. Thus, there is no reason to conclude that Article VI supports a different result.

In the second place, we see no reason to disturb the bankruptcy court's interpretation of its own confirmation order. It is well accepted that, when a court enters an order and later interprets that order, its interpretation is entitled to deference. "We owe substantial deference to the bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced that it amounts to an abuse of discretion." Marciano v. Fahs (In re Marciano), 459 B.R. 27, 35 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013) (quoting Ill. Inv. Tr. No. 92 7163 v. Allied Waste Indus., Inc. (In re Res. Tech. Corp.), 624 F.3d 376, 386 (7th Cir. 2010)).

In the present case, the bankruptcy court entered the order granting confirmation of the Plan. The Plan is not attached to the order, but the order makes no sense unless read with the Plan. Therefore, the Plan is an integral part of the order.

10

When the bankruptcy court held that the Plan confirmation did not dispose of the nondischargeability claim, the court was effectively interpreting its own prior order. The bankruptcy court's interpretation of its order granting confirmation of the Plan was not illogical, implausible, without support in inferences that may be drawn from the facts in the record, or otherwise an abuse of discretion. Further, if the court had adopted the contrary interpretation, the confirmation order would have been erroneous. See generally United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 277 (2010) (holding that a bankruptcy court may not confirm a plan contrary to the law and that the court is under an obligation to direct a debtor to conform a deficient plan to the governing statutes). As such, we find no reason to overturn the bankruptcy court's reasoned interpretation of its own order.

    **3. The court's interpretation of § 1141(d)(2) does not lead to an "open-ended" right to seek nondischargeability determinations.**

Mr. Reder argues that the bankruptcy court's order erroneously "provides creditors with an open-ended right to determine nondischargeability, irrespective of Plan confirmation." This argument is unsupported and unsupportable.

Mr. Reder is essentially arguing that there are two deadlines for nondischargeability claims in individual chapter 11 cases. First, it is undisputed that a creditor generally must file a complaint within a prescribed period of time. Rule 4007 requires that "a complaint to determine the dischargeability of a

11

debt under § 523(c)[6] shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)."

Second, he wants us to rule that, in order to survive plan confirmation, a nondischargeability claim must be adjudicated prior to plan confirmation. However, no authority supports the imposition of a second deadline. The Bankruptcy Code and Rules do not require a court to make a determination on nondischargeability claims before plan confirmation.[7]

Mr. Reder's argument is also unsound on policy grounds. Courts should be encouraged to confirm plans as soon as possible, so creditors can begin to receive distributions. Courts should also be encouraged to take an appropriate amount of time to decide the often complicated matters presented in dischargeability proceedings. If courts were precluded from confirming plans until they decided all adversary proceedings, creditors would be forced to wait much longer to receive distributions. Similarly, if courts hurried to decide

---

[6] Section 523(c)(1) provides that "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of section (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge . . . ."

[7] The timing of chapter 7 cases provides the clearest illustration of the irrelevance of the timing of the determination of dischargeability. A court must generally enter a discharge sixty days after the first § 341(a) meeting of creditors. See Rule 4004(c)(1). While certain events may delay discharge (such as the filing of a complaint under § 727), a pending complaint seeking a determination of dischargeability is not one of those events. In other words, in a chapter 7 case, a nondischargeability claim may be decided long after a debtor receives his discharge.

12

dischargeability proceedings in the interest of timely confirming plans, they might find it more difficult to engage in reasoned consideration of the dischargeability issues. Neither approach would serve the purposes of the Bankruptcy Code.

We thus decline to impose a second deadline on nondischargeability claims.

**4.   Schupbach is inapposite.**

Mr. Reder relies almost exclusively on an unpublished disposition out of the Tenth Circuit, Bank of Commerce & Trust Co. v. Schupbach (In re Schupbach), No. 14-3166, 607 Fed. App'x 831, 2015 WL 2372784 (10th Cir. May 19, 2015). Mr. Reder misstates the holding of that case.

In Schupbach, the debtors were individuals who were the principals of an LLC. The LLC obtained financing from the creditor bank, and the individual debtors personally guaranteed the loans. Both the individual debtors and the LLC filed chapter 11 bankruptcy. The bank filed an adversary proceeding against the individual debtors, alleging that some of the debt was nondischargeable under §§ 523(a)(2) and (a)(6). The court dismissed the bank's § 523(a)(2) claim as untimely. Id. at 833.

Shortly thereafter, the court confirmed the plan of liquidation in the LLC's bankruptcy. The plan provided for the transfer to the bank, on account of its secured claim, of all real property in which the bank held a first mortgage, "includ[ing] the properties serving as collateral on the six loans at issue in the Bank's adversary proceeding." Id.

The court held a bench trial on the bank's adversary proceeding. It denied the bank's § 523(a)(6) claim on the merits

13

and entered judgment in favor of the debtors. The bank appealed to the BAP the bankruptcy court's earlier dismissal of the § 523(a)(2) claim as untimely.

While the appeal was pending, the individual debtors filed a proposed chapter 11 plan. The plan had to address an issue which is common in such cases: where the debtor is the guarantor of a debt, and the principal obligor is likely to pay or otherwise satisfy the debt in whole or in part, the plan must coordinate the amount the individual debtor/guarantor will pay with the amount the principal debtor will pay. In Schupbach, the plan provided that "[t]he value of the collateral for the Class 4 Claim of [the Bank] far exceeds the claim asserted by [the Bank]. As such, the treatment in the LLC Plan 'shall be provided to [the Bank] in full satisfaction of the Class 4 Claim.'" Put simply, the debtors' plan provided that, because the bank's collateral was worth more than the amount of its debt, and the LLC's plan provided that the LLC would transfer the collateral to the bank, the bank's claims against the debtors had been satisfied. The bank did not object to the plan or any calculation therein. Id. at 834.

The debtors later moved to dismiss the BAP appeal, arguing that the nondischargeability claim was moot because the bank's claims against the debtors had been satisfied in full. The BAP granted the motion and dismissed the appeal for lack of jurisdiction. Id. at 835.

On appeal to the Tenth Circuit, the appeals court held that the nondischargeability claim was mooted by the confirmation of the plan, which provided that the bank's claim was fully

14

satisfied. The court held:

> **Even if** the Bank were to prevail in its appeal by obtaining a reversal of the bankruptcy court's dismissal of its § 523(a)(2) claim as untimely, and **even if** the bankruptcy court held on remand that a portion of the Bank's claim is nondischargeable, it remains impossible for that court to grant the Bank any effectual relief because the Bank's claim against Debtors — **including** the portion it sought to exclude from discharge — has been satisfied in full.

Id. at 836 (emphasis in original).

Schupbach has nothing to do with this case. Schupbach did not address the effect of plan confirmation on nondischargeability claims, but rather the manner in which a particular claim was **satisfied** under a specific plan. The court's decision was based on the fact that the creditor's claim was satisfied – i.e., paid by surrender of collateral – and **not** by the fact that the adversary proceeding had not yet been adjudicated. The court stated that, because the bank's nondischargeability "claim in the Individual Case **was fully satisfied by the previous transfer of real property** to the Bank under the terms of the confirmed LLC Plan[,] . . . once the Individual Plan was confirmed and the Confirmation Order was unchallenged on appeal, **there was no remaining case or controversy** regarding the Bank's nondischargeability claim." Id. (emphases added). In other words, the satisfaction of the bank's claim, not the mere fact that the plan was confirmed, mooted the adversary proceeding.

In any event, we are not bound by an unpublished disposition from another circuit. Accordingly, Schupbach does not control, and Mr. Fisher's claim was not discharged.

/ / /

15

**B. Mr. Fisher's objection to the Plan is not relevant to the issues on appeal.**

Finally, Mr. Reder argues that Mr. Fisher's failure to object to the Plan was a waiver of his right to seek relief outside of the scope of the Plan. We disagree.

In <u>California State Board of Equalization v. Ward</u> <u>(In re Artisan Woodworkers)</u>, 225 B.R. 185 (9th Cir. BAP 1998), <u>aff'd</u>, 204 F.3d 888 (9th Cir. 2000), we considered whether the appellant's failure to object to the chapter 11 plan bound him to the plan terms and resulted in the discharge of the appellant's claims. Relying on § 1141(d)(2), we stated, "[i]n general, a confirmed chapter 11 plan binds all creditors, including creditors who may have rejected the plan or objected to its confirmation. **A confirmed plan may not, however, extinguish or discharge an otherwise nondischargeable debt, even where the creditor fails to participate in the confirmation process**." <u>Id.</u> at 190 (internal citation omitted) (emphasis added).

In short, Mr. Fisher was entitled to pursue his nondischargeability action regardless of whether he objected to the Plan.

Moreover, Mr. Reder took conflicting positions regarding Mr. Fisher's objection. In response to Mr. Reder's amended plan, Mr. Fisher filed a detailed, three-page objection. Mr. Reder responded by urging the court to overrule the objection, stating that an adversary proceeding was the proper avenue for Mr. Fisher to seek relief on his claims: "If Fisher is Objecting to the discharge of his claim, the Bankruptcy Rule requires an adversary proceeding and the Court cannot rule on the dischargeability of

16

Fisher's claim based on any motion that Fisher may file. . . . Fisher has not filed a complaint as required by the Bankruptcy Rule. Therefore, the Court should overrule Fisher's Objection to Confirmation of Debtor's Plan." Nevertheless, despite Mr. Fisher's adversary proceeding based on the same allegations, Mr. Reder now argues that Mr. Fisher needed to object to the Plan, rather than file an adversary proceeding. Mr. Reder cannot have it both ways. We reject his argument that Mr. Fisher failed to preserve his claim.

## CONCLUSION

For the reasons set forth above, we conclude that the bankruptcy court did not err in holding the $110,000 debt nondischargeable under § 523(a)(2)(A). Accordingly, we AFFIRM.

17